UNITED STATES of America, Plaintiff-Appellee,

v.

Francis J. WARIN, Defendant-Appellant,

Second Amendment Foundation, Amicus Curiae.

No. 75–1734.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 16, 1975.

Decided Feb. 4, 1976.

Certiorari Denied June 21, 1976. See 96 S.Ct. 3168.

104

Norman G. Zemmelman, Britz & Zemmelman, Toledo, Ohio, for defendant-appellant.

Richard A. Derham, Davis, Wright, Todd, Riese & Jones, Seattle, Wash., for amicus curiae.

Fredrick M. Coleman, U. S. Atty., Erie D. Chapman, III, Asst. U. S. Atty., Toledo, Ohio, Harry H. Ellis, Regional Counsel, Bureau of Alcohol, Tobacco & Firearms, Cincinnati, Ohio, for plaintiff-appellee.

Before PHILLIPS, Chief Judge, and LIVELY and ENGEL, Circuit Judges.

LIVELY, Circuit Judge.

This case requires a determination of whether certain provisions of the National Firearms Act as amended by the Gun Control Act of 1968, 26 U.S.C. § 5801 et seq., are an invalid infringement on the right to keep and bear arms guaranteed by the Second Amendment to the Constitution which provides—

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

The defendant appeals from his conviction of the charge that he "willfully and knowingly possessed a firearm, that is a 9 mm prototype submachine gun measuring approximately 21 inches overall length, with a barrel length of approximately 7½ inches, which had not been registered to him in the National Firearms Registration and Transfer Record as required by Chapter 53, Title 26, United States Code" in violation of 26 U.S.C. §§ 5861(d) and 5871.

At trial before the court, the following facts were stipulated to be true:

That on or about the 19th day of March, 1974, in the Northern District of Ohio, Western Division, Francis J. Warin willfully and knowingly possessed a firearm, that is, a 9-millimeter prototype submachine gun measuring approximately twenty-one inches overall length, with a barrel length of approximately seven and a half inches, which had not been registered to him

in the National Firearms Registration and Transfer Record, . . . that submachine guns are used by the armed forces of the United States, and that submachine guns contribute to the efficient operation of the armed forces of the United States in their function of defending the country . . . . [T]hat the weapon involved in this case is a submachine gun . . . . [T]hat 9-millimeter submachine guns have been used by at least one Special Forces Unit of the Army in the Vietnam, . . . although they are not in general use. 9-millimeter submachine guns have been used by the military forces of the United States on at least one occasion during the Vietnam war . . . . [T]hat submachine guns are part of the military equipment of the United States military— . . . and that firearms of this general type, that is, submachine guns, do bear some relationship, some reasonable relationship, to the preservation or efficiency of the military forces.

The district court found that the defendant, as an adult male resident and citizen of Ohio, is a member of the "sedentary militia" of the State.[1] It was not contended that Warin was a member of the active militia. The court also found that the defendant was an engineer and designer of firearms whose employer develops weapons for the government and—

. . . that the defendant had made the weapon in question, which is indeed a firearm as described in the Act. It is also clear from the evidence that the weapon was of a type which is

standard for military use, and fires the ammunition which is in common military use for the weapons used by individual soldiers in combat. The defendant testified that he had designed and built the weapon for the purpose of testing and refining it so that it could be offered to the Government as an improvement on the military weapons presently in use. The weapon was not registered to him as required by law. These findings are not disputed.

In *United States v. Miller*, 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939), the Supreme Court held that the National Firearms Act of 1934 did not violate the Second Amendment. In its opinion the Court stated:

In the absence of any evidence tending to show that possession or use of a "shotgun having a barrel of less than eighteen inches in length" at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument. Certainly it is not within judicial notice that this weapon is any part of the ordinary military equipment or that its use could contribute to the common defense. *Id.* at 178, 59 S.Ct. at 818 (citation omitted).

Warin argues that the necessary implication of the quoted language is that a member of the "sedentary militia" may possess any weapon having military capability and that application of 26 U.S.C. § 5861(d)[2] to such a person violates the Second Amendment. We disagree. In *Miller* the Supreme Court did not reach the question of the extent to which a

1. The source of the term "sedentary militia" is unclear. The district court's finding was based in part upon Ohio Constitution, Art. IX § 1, which does not by its own force make adult citizens of Ohio members of the organized or active militia, but merely subjects them to enrollment in that body:

ARTICLE IX: MILITIA

§ 1 Who shall perform military duty.

All citizens, resident of this state, being seventeen years of age, and under the age of sixty-seven years, shall be subject to enroll-

ment in the militia and the performance of military duty, in such manner, not incompatible with the Constitution and laws of the United States, as may be prescribed by law. (As amended Nov. 7, 1961.)

2. Section 5861(d) provides:

It shall be unlawful for any person—

\* \* \* \* \* \*

(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record.

weapon which is "part of the ordinary military equipment" or whose "use could contribute to the common defense" may be regulated. In holding that the absence of evidence placing the weapon involved in the charges against Miller in one of these categories precluded the trial court from quashing the indictment on Second Amendment grounds, the Court did not hold the converse—that the Second Amendment is an absolute prohibition against all regulation of the manufacture, transfer and possession of any instrument capable of being used in military action.

Within a few years after *Miller v. United States* was announced the First Circuit dealt with arguments similar to those made by Warin in the present case. In *Cases v. United States*, 131 F.2d 916 (1st Cir. 1942), *cert. denied sub nom., Velazquez v. United States*, 319 U.S. 770, 63 S.Ct. 1431, 87 L.Ed. 1718 (1943), the court held that the Supreme Court did not intend to formulate a general rule in *Miller*, but merely dealt with the facts of that case. The court of appeals noted the development of new weaponry during the early years of World War II and concluded that it was not the intention of the Supreme Court to hold that the Second Amendment prohibits Congress from regulating any weapons except antiques "such as a flintlock musket or a matchlock harquebus." 131 F.2d at 922. If the logical extension of the defendant's argument for the holding of *Miller* was inconceivable in 1942, it is completely irrational in this time of nuclear weapons.

■ Agreeing as we do with the conclusion in *Cases v. United States, supra,* that the Supreme Court did not lay down a general rule in *Miller*, we consider the present case on its own facts and in light of applicable authoritative decisions. It is clear that the Second Amendment guarantees a collective rather than an individual right. In *Stevens v. United States*, 440 F.2d 144, 149 (6th Cir. 1971), this court held, in a case challenging the constitutionality of 18 U.S.C. App. § 1202(a)(1):

Since the Second Amendment right "to keep and bear Arms" applies only to the right of the State to maintain a militia and not to the individual's right to bear arms, there can be no serious claim to any express constitutional right of an individual to possess a firearm.

*See also, United States v. Johnson*, 497 F.2d 548, 550 (4th Cir. 1974); *United States v. Tot*, 131 F.2d 261, 266 (3d Cir. 1942), *rev'd on other grounds*, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943).

■ It is also established that the collective right of the militia is limited to keeping and bearing arms, the possession or use of which "at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, . . . ." *United States v. Miller, supra,* 307 U.S. at 178, 59 S.Ct. at 818. *See also, United States v. Johnson, supra; Cody v. United States*, 460 F.2d 34, 37 (8th Cir.), *cert. denied*, 409 U.S. 1010, 93 S.Ct. 454, 34 L.Ed.2d 303 (1972).

■ The fact that the defendant Warin, in common with all adult residents and citizens of Ohio, is subject to enrollment in the militia of the State confers upon him no right to possess the submachine gun in question. By statute the State of Ohio exempts "members of . . . the *organized* militia of this or any other state, . . . ." (emphasis added) from the provision, "No person shall knowingly acquire, have, carry, or use any dangerous ordnance." Ohio Revised Code § 2923.17. "Dangerous ordnance" is defined to include any automatic firearm. O.R.C. § 2923.11. There is no such exemption for members of the "sedentary militia." Furthermore, there is absolutely no evidence that a submachine gun in the hands of an individual "sedentary militia" member would have any, much less a "reasonable relationship to the preservation or efficiency of a well regulated militia." *Miller, supra,* 307 U.S. at 178, 59 S.Ct. at 818. Thus we conclude that the defendant has no private right to keep and bear arms under the Second Amendment which would

bar his prosecution and conviction for violating 26 U.S.C. § 5861(d).

■ Even where the Second Amendment is applicable, it does not constitute an absolute barrier to the congressional regulation of firearms. After considering several arguments the Third Circuit in *United States v. Tot, supra*, stated that it decided the case on the "broader ground" that "[w]eapon bearing was never treated as anything like an absolute right by the common law. It was regulated by statute as to time and place as far back as the Statute of Northampton in 1328 and on many occasions since." 131 F.2d at 266 (footnote omitted). In *Stevens v. United States, supra*, this court discussed the broad power of Congress in relying on the commerce clause of the Constitution to deal with the changing needs of the nation. 440 F.2d at 150–152. In *United States v. Wilson*, 440 F.2d 1068, 1069 (6th Cir. 1971), we held that—

> The congressional history of the National Firearms Act Amendments of 1968 and its predecessor statutes clearly sets out facts sufficient for Congress to have determined that the provisions of 26 U.S.C. § 5801 et seq., as amended in 1968, are within both the taxing power, see *Sonzinsky v. United States*, 300 U.S. 506, 57 S.Ct. 554, 81 L.Ed. 772 (1937), and the commerce power of Congress.

Warin argues that to uphold a tax on firearms transactions by one entitled to Second Amendment protection "would be to *sanction a tax on an activity which is constitutionally guaranteed and protected*." (emphasis in appellant's brief, p. 17). He cites First Amendment cases such as *Murdock v. Pennsylvania*, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943), for the proposition that a person cannot be compelled to pay a license or tax in order to exercise a privilege granted by the Constitution. First Amendment rights occupy a "preferred position" among those guaranteed by the Bill of Rights, *Id.* at 115, 63 S.Ct. 870, a position never accorded to Second Amendment rights. Yet even the First Amendment has never

been treated as establishing an absolute prohibition against limitations on the rights guaranteed therein.

In *Cox v. Louisiana*, 379 U.S. 559, 564, 85 S.Ct. 476, 481, 13 L.Ed.2d 487 (1965), the Supreme Court stated:

> We hold that this statute on its face is a valid law dealing with conduct subject to regulation so as to vindicate important interests of society and that the fact that free speech is intermingled with such conduct does not bring with it constitutional protection.

In sustaining a city ordinance prohibiting door-to-door solicitation without prior consent of the residents, the Supreme Court wrote in *Breard v. City of Alexandria*, 341 U.S. 622, 642, 71 S.Ct. 920, 932, 95 L.Ed. 1233 (1951):

> The First and Fourteenth Amendments have never been treated as absolutes.[33] Freedom of speech or press does not mean that one can talk or distribute where, when and how one chooses. Rights other than those of the advocates are involved. By adjustment of rights, we can have both full liberty of expression and an orderly life.

[33] *Cantwell v. Connecticut*, 310 U.S. 296, 303, 304, 60 S.Ct. 900, 903, 84 L.Ed. 1213; *Cox v. New Hampshire*, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049; *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031; *Murdock v. Pennsylvania*, 319 U.S. 105, 109–110, 63 S.Ct. 870, 873, 87 L.Ed. 1292; *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645; *Saia v. New York*, 334 U.S. 558, 561, 68 S.Ct. 1148, 1150, 92 L.Ed. 1574; *Feiner v. New York*, 340 U.S. 315, 71 S.Ct. 303, 95 L.Ed. 295. See the collection of cases in *Niemotko v. Maryland*, 340 U.S. 268, at p. 276 ff., 71 S.Ct. 325, 330, 95 L.Ed. 267.

Similarly, in upholding a statute which required a special license to hold a parade, the Court stated that "Civil liberties, as guaranteed by the Constitution, imply the existence of an organized society maintaining public order without which liberty itself would be lost in the excesses of unrestrained abuses." *Cox v. New Hampshire*, 312 U.S. 569, 574, 61 S.Ct. 762, 765, 85 L.Ed. 1049 (1941).

■ As the legislative history of the Act under consideration clearly shows,

Congress was dealing with problems which threaten the maintenance of public order. There can be no question that an organized society which fails to regulate the importation, manufacture and transfer of the highly sophisticated lethal weapons in existence today does so at its peril. The requirement that no one may possess a submachine gun which is not registered to him in the National Firearms Registration and Transfer Record is a reasonable regulation for the maintenance of public order.

■ The defendant appears to concede that some regulation of firearms is permitted. He argues that the taxes imposed upon the making and transfer of such weapons are not appropriate revenue measures, but that their imposition constitutes an indirect attempt to suppress the constitutional right to keep arms. Again, this argument assumes that the Second Amendment granted private rights to individuals, a position which we have rejected. Nevertheless it should be noted that the Act imposes no tax or license on the keeping and bearing of arms, the only rights referred to in the Second Amendment. The taxes are imposed on specific transactions involving firearms. Since the Act does not attempt to tax the right to keep and bear arms, its taxing provisions do not, under any set of circumstances, apply to rights protected by the Second Amendment.

■ The defendant also argues that "certain regulations pertaining to the manufacture of the type of firearm involved here were unconstitutional on Fifth Amendment due process grounds." The defendant was not charged with violating laws pertaining to the manufacture of firearms, but only with possession of an unregistered submachine gun. The Act deals with a number of distinct offenses, and one may not attack his conviction of one of the offenses by questioning the constitutionality of provisions relating to another offense. *See United States v. Black*, 431 F.2d 524, 530 (6th Cir. 1970), *cert. denied*, 402 U.S. 975, 91 S.Ct. 1673, 29 L.Ed.2d 140 (1971). The district court properly declined to consider Warin's due process arguments as a maker of firearms.

■ We also agree with the disposition by the district court of defendant's contention that the statute under which he was charged and convicted violates the Ninth Amendment to the Constitution. We simply do not conceive of the possession of an unregistered submachine gun as one of those "additional fundamental rights, protected from governmental infringement, which exist alongside those fundamental rights specifically mentioned in the first eight constitutional amendments." *Griswold v. Connecticut*, 381 U.S. 479, 488, 85 S.Ct. 1678, 1684, 14 L.Ed.2d 510 (1965) (concurring opinion of Goldberg, J.).

It would unduly extend this opinion to attempt to deal with every argument made by defendant and *amicus curiae*, Second Amendment Foundation, all of which are based on the erroneous supposition that the Second Amendment is concerned with the rights of individuals rather than those of the States or that defendant's automatic membership in the "sedentary militia" of Ohio brings him within the reach of its guarantees.

The judgment of the district court is affirmed.