**Lee A. SANDIDGE, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 84–1045.

District of Columbia Court of Appeals.

Argued Dec. 11, 1986.

Decided Feb. 11, 1987.

Elaine Mittleman, Washington, D.C., appointed by the court, for appellant.

Maria Cassalia, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, J. Edward Agee, and Donald Allison, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

William J. Olson, Washington, D.C., filed an amicus curiae brief for The Center for Judicial Studies and Gun Owners Foundation.

Dan M. Peterson was on the brief for the amici curiae.

Before NEBEKER, FERREN, and ROGERS, Associate Judges.

FERREN, Associate Judge:

After a jury trial, appellant was convicted of carrying a pistol without a license, D.C.Code § 22–3204 (1981), possession of an unregistered firearm, *id.* § 6–2311, and unlawful possession of ammunition, *id.* § 6–2361. The trial court sentenced him to one to ten years imprisonment, then suspended the sentence and placed appellant on probation for two years. Appellant also was fined $150. Appellant's sole contention is that the District of Columbia firearms statutes violate his constitutional right to "keep and bear Arms." U.S. CONST. amend. II.[1] In previous decisions upholding firearms statutes in the District of Columbia against constitutional challenges, we have not addressed second amendment concerns. *Williams v. United*

---

1. The second amendment to the Constitution provides: "A well regulated militia being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

**1058** ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

*States,* 237 A.2d 539, 540 (D.C.1968) (court will not consider second amendment challenge raised for the first time on appeal); *Scott v. United States,* 243 A.2d 54 (D.C. 1968) (holding that statute is not void for vagueness); *McIntosh v. Washington,* 395 A.2d 744, 754–57 (D.C.1978) (ruling against appellant who raised defenses based on due process, equal protection, vagueness, and the burdening of interstate commerce); *Fesjian v. Jefferson,* 399 A.2d 861 (D.C. 1979) (denying equal protection and takings challenges). We now hold that D.C.Code §§ 6–2311, 6–2361, and 22–3204 (1981) do not violate the second amendment. We affirm appellant's convictions.

We agree with numerous other courts that "the Second Amendment guarantees a collective rather than an individual right." *United States v. Warin,* 530 F.2d 103, 106 (6th Cir.), *cert. denied,* 426 U.S. 948, 96 S.Ct. 3168, 49 L.Ed.2d 1185 (1976); *accord Stevens v. United States,* 440 F.2d 144, 149 (6th Cir.1971); *United States v. Kozerski,* 518 F.Supp. 1082, 1090 (D.N.H.1981), *aff'd mem.,* 740 F.2d 952 (1st Cir.), *cert. denied,* 469 U.S. 842, 105 S.Ct. 147, 83 L.Ed.2d 86 (1984); Annot. 37 A.L.R.Fed. 696, 706 (1978) (citing cases). That is to say, it protects a state's right to raise and regulate a militia by prohibiting Congress from enacting legislation that will interfere with that right. The second amendment says nothing that would prohibit a state (or the legislature for the District of Columbia) from restricting the use or possession of weapons in derogation of the government's own right to enroll a body of militiamen "bearing arms supplied by themselves" as in bygone days. *United States v. Miller,* 307 U.S. 174, 179, 59 S.Ct. 816, 818, 83 L.Ed. 1206 (1939). In sum, "[t]he right to keep and bear arms is not a right conferred upon the people by the federal constitution. Whatever rights the people may have depend upon local legislation...." *Cases v. United States,* 131 F.2d 916, 921 (1st Cir. 1942), *cert. denied,* 319 U.S. 770, 63 S.Ct. 1431, 87 L.Ed. 1718 (1943).

This is not a case where Congress, wearing a federal hat, has used the criminal law to undercut rights granted elsewhere in the District of Columbia Code by the Council of the District of Columbia or by Congress itself, acting as a local legislature. Indeed, there is no local legislation granting the right to bear unregistered firearms in the District of Columbia. To the contrary, the statutory provisions for an "enrolled militia," D.C.Code §§ 39–101 through 39–105 (1981), do not refer to arms, and the provisions for organizing a "portion of the enrolled militia," *id.* § 39–105, into a volunteer "National Guard of the District of Columbia," *id.* § 39–106, make clear that the arms, as well as the uniforms and equipment, shall be furnished by the government, *id.* § 39–201, not by the individuals themselves. Accordingly, assuming the second amendment applies to the District of Columbia, we hold it affords appellant no protection whatsoever since the congressionally approved criminal law does not interfere with any government-created right to keep and bear arms.

Appellant's reliance on *United States v. Miller,* 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939), is misplaced. In *Miller,* the Supreme Court held that the National Firearms Act of 1934 did not violate the second amendment:

> In the absence of any evidence tending to show that possession or use of a "shotgun having a barrel of less than eighteen inches in length" at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument.

307 U.S. at 178, 59 S.Ct. at 818. We reject appellant's contention that *Miller* stands for the proposition that Congress may regulate only those classes of weapons which have no relationship to the militia. The Supreme Court "did not intend to formulate a general rule in *Miller,* but merely dealt with the facts of that case." *Warin,* 530 F.2d at 106 (citing *Cases,* 131 F.2d at 922). Given the destructive capabilities of modern weaponry, it is inconceivable and

irrational to suggest, as the logic of appellant's argument does, that Congress may only regulate weapons which have no possible relationship to the common defense today "such as a flintlock musket or a matchlock harquebus." [2] *Id.*

The purpose of the second amendment is "to preserve the effectiveness and assure the continuation of the state militia." *United States v. Oakes,* 564 F.2d 384, 387 (10th Cir.1977), *cert. denied,* 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521 (1978). Appellant cannot show that possession of a handgun by an individual bears any relationship to the District of Columbia's desire and ability to preserve a well regulated militia. *See* D.C.Code §§ 39–106, –201 (1981) (provides for organized militia, called the National Guard, to be armed by government); *Miller,* 307 U.S. at 178, 59 S.Ct. at 818; *Warin,* 530 F.2d at 106 (possession of submachine gun by individual has no relationship to preservation or efficiency of a well regulated militia).

*Affirmed.*

NEBEKER, Associate Judge, concurring:

On the assumption which we make that the second amendment applies at all to the District of Columbia, I concur in the opinion of the court. I write separately to state my conclusion that the second amendment does not apply to the seat of national government. This amendment is to ensure "the security of a free State." State militias were essential to that end—hence, the amendment. Nothing suggests that the founders were concerned about "free territories," "free protectorates" or a "free Seat of Government of the United States." *See* U.S. Const. art. I, § 8, cl. 17. Indeed clause 17 gives to Congress exclusive legislative power in all cases over such "District." It may fairly be said that a federal

militia is available in such places. Therefore, whatever may be said for the second amendment and its reach within the several states, I conclude first that it does not apply to the Seat of Government of the United States.

---

2. Appellant's argument that the second amendment guarantees an individual the right to bear only those weapons that one person can operate does not supply a meaningful limitation. That interpretation would still put lethal weapons such as high powered rifles, machine guns, and

even some antitank weapons beyond the scope of legislative control. *See Cannon Control,* Washington Post, Dec. 19, 1986, at A20, col. 1. It is inconceivable that the Supreme Court intended in *Miller* to recognize the right of unrestricted access to such weapons.