81 F.3d 98
 96 Cal. Daily Op. Serv. 2323, 96 Daily Journal
D.A.R. 3934
Douglas Ray HICKMAN, Plaintiff-Appellant,
v.
Sherman BLOCK; Claude L. Farris; Patrick G. Leonard; City
of Los Angeles; Darryl Gates, Police Chief; Robert
Talcott; Herbert Boekmann; Reva B. Tooley; Samuel L.
Williams; Stephen D. Yslas; William Cowdin; Frank E.
Piersol; Dominick J. Rivetti; City of San Fernando;
County of Los Angeles, Defendants-Appellees.
 No. 94-55836.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 13, 1995.
Decided April 5, 1996.
 
 Richard R. Hopkins, Law Office of Richard Hopkins, Simi Valley, California, for plaintiff-appellant.
 Randel L. Ledesma, Greines, Martin, Stein & Richland, Beverly Hills, California, for defendants-appellees County of Los Angeles and Sherman Block.
 Donna Weisz Jones, Deputy City Attorney, Los Angeles, California, for defendant-appellee City of Los Angeles.
 Kevin H. Louth, Arthur G. Lesmez, and Joseph Zamora, Liebman, Reiner, Nashison & Walsh, Los Angeles, California, for defendants-appellees City of San Fernando and Rivetti.
 Don B. Kates, Benenson & Kates, Novato, California, for amici.
 Appeal from the United States District Court for the Central District of California Robert M. Takasugi, District Judge, Presiding. No. CV-91-05594-RMT(Bx).
 Before: HALL and NOONAN, Circuit Judges, and SHUBB,* District Judge.
 CYNTHIA HOLCOMB HALL, Circuit Judge:
 
 
 1
 Douglas Ray Hickman appeals from an order granting summary judgment in favor of the appellees, who denied Hickman a concealed weapons permit. He complains, among other things, that the appellees' permit issuance policy violated his Second Amendment right to bear arms. We have jurisdiction over his timely appeal pursuant to 28 U.S.C. section 1291, and affirm on the basis that Hickman lacks standing to sue for a violation of the Second Amendment.
 
 
 2
 * Hickman owns and operates a responding security alarm company.[1] He is also a federally licensed arms dealer. Wishing to break into the lucrative field of "executive protection," Hickman submitted a string of applications for a concealed firearms permit to the appellee municipal authorities. When the authorities denied Hickman's applications, he filed this suit for damages and injunctive relief, arguing several theories of liability under 42 U.S.C. sections 1983 and 1985(3). We considered and rejected in a unpublished memorandum disposition all of Hickman's various arguments save one: his claim for relief under section 1983 based on a violation of the Second Amendment. This issue we now address. Only appellees County of Los Angeles, City of San Fernando, and their named officials remain as parties to the action.
 
 
 3
 The appellees issue concealed firearms permits under the authority of a California statute which provides, in relevant part:
 
 
 4
 The sheriff of a county or the chief or other head of a municipal police department of any city or city and county, upon proof that the person applying is of good moral character, that good cause exists for the issuance, and that the person applying is a resident of the county, may issue to that person a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person ...
 
 
 5
 Cal.Penal Code § 12050(a)(1) (emphasis added). The County and San Fernando share in common a policy concerning the requirements of "good cause." Under the policy, good cause is shown by
 
 
 6
 convincing evidence of a clear and present danger to life ... which cannot be adequately dealt with by existing law enforcement resources, and which danger cannot be reasonably avoided by alternative measures, and which danger would be significantly mitigated by the applicant's carrying of a concealed firearm.
 
 
 7
 The policy also requires some proof of firearms training. Finally, the policy provides that "[n]o position or job classification in itself should constitute good cause for the issuance or denial of a license." Each application is to be reviewed individually for cause.
 
 
 8
 Hickman first applied for a permit in 1988. He applied to each of the appellees in turn, stating that he required a permit in order to work as a private bodyguard. The County and San Fernando denied his applications on the grounds that Hickman, having cited no "clear and present danger" to personal safety, had failed to show good cause. Hickman next attempted to obtain a permit in 1989 by joining a reserves unit for the San Fernando police department.[2] For reasons not clear in the record, San Fernando denied him admission to the reserves and blocked this approach to a permit.[3]
 
 
 9
 Hickman submitted his final round of permit applications in 1991, following two incidents which, he felt, amounted to a showing of good cause. First, Hickman reported being "approached" by two "Hispanic men" while he loaded ammunition into his car. He frightened them away by raising an unloaded pistol. Second, Hickman recited an isolated threat by a disgruntled ex-employee, who allegedly said: "I know where you live;" "You will have to look over your shoulder for the rest of your life;" and "I will get you and it won't even be me." On the force of these incidents Hickman reapplied to the County and San Fernando. The County denied Hickman's application for failure to show cause and San Fernando apparently failed to respond.
 
 
 10
 Hickman next went to court; he filed this lawsuit in October 1991. In March 1992 the district court granted the County's motion to dismiss Hickman's action to the extent that it was based upon a violation of the Second Amendment. It also denied his section 1985(3) conspiracy claim. The City of Los Angeles, having been a party only to the conspiracy claim, was then dismissed as a party to the suit. In July 1992 the County moved for summary judgment on the remaining claims. Discovery ensued. San Fernando joined in the County's motion. In May 1994 the district court entered its final order granting summary judgment for the remaining appellees: the County, San Fernando and their respective municipal officers.
 
 II
 
 11
 The Second Amendment to the United States Constitution states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Hickman argues that the Second Amendment requires the states to regulate gun ownership and use in a "reasonable" manner. The question presented at the threshold of Hickman's appeal is whether the Second Amendment confers upon individual citizens standing to enforce the right to keep and bear arms. We follow our sister circuits in holding that the Second Amendment is a right held by the states, and does not protect the possession of a weapon by a private citizen. We conclude that Hickman can show no legal injury, and therefore lacks standing to bring this action.
 
 
 12
 Article III of the Constitution restricts the federal courts to adjudicating actual "cases" or "controversies." This limitation "defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded." Allen v. Wright, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). Among the cluster of doctrines that ensure our adherence to the case-or-controversy requirement, the "doctrine that requires a litigant to have 'standing' to invoke the power of a federal court is perhaps the most important." Id. Article III standing is a jurisdictional prerequisite. See id. at 754, 104 S.Ct. at 3326. Thus, we are bound to address the standing issue at the threshold of the case.
 
 
 13
 The party invoking federal jurisdiction has the burden to establish his standing to sue. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). To do so, a litigant must satisfy three elements which constitute the "irreducible constitutional minimum" of Article III standing. Id. First, the plaintiff must have suffered injury to a legally protected interest. Id. This injury must be both "concrete and particularized," id. (citing Warth v. Seldin, 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975); Sierra Club v. Morton, 405 U.S. 727, 740-41, 92 S.Ct. 1361, 1368-69, 31 L.Ed.2d 636 (1972)), and "actual or imminent" rather than "conjectural or hypothetical." Id. (citing Whitmore v. Arkansas, 495 U.S. 149, 155, 110 S.Ct. 1717, 1723, 109 L.Ed.2d 135 (1990) (quoting Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983)) (internal quotations omitted)). Second, "there must be a causal connection between the injury and the conduct complained of." Id. (citing Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 41-42, 96 S.Ct. 1917, 1925-26, 48 L.Ed.2d 450 (1976)). Third, the injury must be redressable by a favorable judicial decision.[4] Id. (citing Simon, 426 U.S. at 38, 96 S.Ct. at 1924).
 
 
 14
 This case turns on the first constitutional standing element: whether Hickman has shown injury to an interest protected by the Second Amendment. We note at the outset that no individual has ever succeeded in demonstrating such injury in federal court. The seminal authority in this area continues to be United States v. Miller, 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939), in which the Supreme Court upheld a conviction under the National Firearms Act, 26 U.S.C. § 1132 (1934), for transporting a sawed-off shotgun in interstate commerce. The Court rejected the appellant's hypothesis that the Second Amendment protected his possession of that weapon. Consulting the text and history of the amendment, the Court found that the right to keep and bear arms is meant solely to protect the right of the states to keep and maintain armed militia. In a famous passage, the Court held that
 
 
 15
 [i]n the absence of any evidence tending to show that the possession or use of a "shotgun having a barrel of less than eighteen inches in length" at this time has some reasonable relationship to the preservation or efficiency of a well-regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument.
 
 
 16
 307 U.S. at 178, 59 S.Ct. at 818.[5] The Court's understanding follows a plain reading of the Amendment's text. The Amendment's second clause declares that the goal is to preserve the security of "a free state;" its first clause establishes the premise that a "well-regulated militia" is necessary to this end. Thus it is only in furtherance of state security that "the right of the people to keep and bear arms" is finally proclaimed.[6]
 
 
 17
 Following Miller, "[i]t is clear that the Second Amendment guarantees a collective rather than an individual right." United States v. Warin, 530 F.2d 103, 106 (6th Cir.), cert. denied 426 U.S. 948, 96 S.Ct. 3168, 49 L.Ed.2d 1185 (1976); see also Thomas v. Members of City Council of Portland, 730 F.2d 41, 42 (1st Cir.1984) (same, citing Warin ); United States v. Johnson, 497 F.2d 548, 550 (4th Cir.1974) (cited with approval in Lewis, 445 U.S. at 65 n. 8, 100 S.Ct. at 921 n. 8) (same). Because the Second Amendment guarantees the right of the states to maintain armed militia, the states alone stand in the position to show legal injury when this right is infringed.
 
 
 18
 Nevertheless, Hickman argues that under the Second Amendment, individuals have the right to complain about the manner in which a state arms its citizens. We fail to see the logic in this argument. The Second Amendment creates a right, not a duty. It does not oblige the states to keep armed militia,[7] or to arm their citizens generally, although some states do preserve, nominally at least, a broad individual right to bear arms as a foundation for their state militia.[8] See, e.g., People v. Blue, 190 Colo. 95, 544 P.2d 385 (1975) (en banc) (citing Colo. Const. art. II, § 13) (recognizing individual right to bear arms under state constitution); State v. Amos, 343 So.2d 166, 168 (La.1977) (citing La. Const. art I, § 11) (same proposition); State v. Krantz, 24 Wash.2d 350, 164 P.2d 453 (1945) (citing Wash. Const. art I, § 24) (same proposition); Akron v. Williams, 113 Ohio App. 293, 177 N.E.2d 802 (1960) (citing Ohio Const. art. I, § 4) (same proposition). Even in states which profess to maintain a citizen militia, an individual may not rely on this fact to manipulate the Constitution's legal injury requirement by arguing that a particular weapon of his admits some military use, or that he himself is a member of the armed citizenry from which the state draws its militia. United States v. Oakes, 564 F.2d 384, 387 (10th Cir.1977), cert. denied, 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521 (1978) (technical membership in state militia insufficient to show legal injury under Second Amendment); Warin, 530 F.2d at 106 (same with respect to individual "subject to enrollment" in state militia); United States v. Hale, 978 F.2d 1016, 1019 (8th Cir.1992) (same, citing Warin ); United States v. Graves, 554 F.2d 65, 66 n. 2 (3rd Cir.1977) (en banc) (narrowly construing the Second Amendment "to guarantee the right to bear arms as a member of a militia").
 
 
 19
 Hickman's claim amounts to a "generalized grievance" regarding the organization and training of a state militia. See Lujan, 504 U.S. at 575, 112 S.Ct. at 2144. We do not involve ourselves in such matters. As the Supreme Court has observed, "decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments," and as such are nonjusticiable. Gilligan, 413 U.S. 1, 10, 93 S.Ct. 2440, 2446 (1973). "[I]t is difficult to conceive of an area of governmental activity in which the courts have less competence." Id. For this reason, among others, we leave military matters to the elected branches of government.[9] See id.
 
 III
 
 20
 Because the right to keep an armed militia is a right held by the states alone, Hickman has failed to show "injury" as required by constitutional standing doctrine. Accordingly, we have no jurisdiction to hear his appeal.[10]
 
 
 21
 The judgment is AFFIRMED.
 
 
 
 *
 Hon. William B. Shubb, United States District Judge for the Eastern District of California, sitting by designation
 
 
 [1]
 Under California law, this entitles Hickman to carry an exposed firearm while he is in uniform. See Cal.Penal Code § 12031(d)
 
 
 [2]
 At oral argument, Hickman's attorney denied that his client had attempted to join the reserves to obtain a permit. However, in his 1991 permit re-application to the County, Hickman stated that his "ulterior motive" for applying to the reserves had been to obtain a permit. Police officers obtain their concealed weapons authorization under a separate statute, which does not demand a showing of good cause. See Cal.Penal Code § 12031(b). Hickman does not attack the preferential access of police officers to concealed weapons permits in this lawsuit
 
 
 [3]
 According to Hickman, the San Fernando Police cited a potential conflict of interest between Hickman's private security operation and his official duties. San Fernando maintains that it rejected Hickman's application after uncovering his ulterior motive
 
 
 [4]
 In addition to its constitutional components, standing doctrine also includes several "judicially self-imposed" constituents, grounded in comity and prudence. Wright, 468 U.S. at 751, 104 S.Ct. at 3324. We need not address these elements here, however
 
 
 [5]
 The Supreme Court has not revisited the meaning of the Second Amendment except to cite Miller for the proposition that federal restrictions on the use of firearms by individuals do not "trench upon any constitutionally protected liberties." Lewis v. United States, 445 U.S. 55, 65 n. 8, 100 S.Ct. 915, 921 n. 8, 63 L.Ed.2d 198 (1980) (upholding 18 U.S.C.App. § 1202(a)(1))
 
 
 [6]
 The Constitution provided for armed militia because "[t]he sentiment of the time strongly disfavored standing armies...." Miller, 307 U.S. at 179, 59 S.Ct. at 818. Under the resultant constitutional scheme, Congress had power to raise an army if circumstances required, however "the common view was that adequate defense of country and laws could be secured through the Militia--civilians primarily, soldiers on occasion." Id.; see also Perpich v. Dept. of Defense, 496 U.S. 334, 340, 110 S.Ct. 2418, 2422-23, 110 L.Ed.2d 312 (1990) (discussing constitutional compromise of state sovereignty, individual liberty and necessity of common defense which resulted in provision for both a national army and state militia)
 
 
 [7]
 Although Congress may do so. See U.S. Const. art. I, § 8, cls. 15-16 (Militia Clauses); Miller, 307 U.S. at 178, 59 S.Ct. at 818 (discussing division of power over the militia between Congress and the states); Perpich, 496 U.S. at 340, 110 S.Ct. at 2422-23 (same); Select Draft Law Cases, 245 U.S. 366, 383, 38 S.Ct. 159, 163, 62 L.Ed. 349 (1918) (same)
 
 
 [8]
 Originally, in the American Colonies of the 17th Century, "as in England, the militia system was based on the principle of the assize of arms. This implied the general obligation of all adult male inhabitants to possess arms, and, with certain exceptions, to cooperate in the work of defense." Miller, 307 U.S. at 179-80, 59 S.Ct. at 818. To ensure the readiness of their militias, the colonies enacted laws "intended to assure the possession of arms and ammunition by all who would be subject to military service." Id. at 180, 59 S.Ct. at 818-19. The Second Amendment preserved the right of the new American states to continue this practice
 Likewise, in the early days of the Republic, Congress passed a statute to establish "an Uniform Militia throughout the United States" by requiring universal self-armament for men of appropriate age. Perpich, 496 U.S. at 341, 110 S.Ct. at 2423 (discussing 1 Stat. 271). In practice the command was ignored, and so in 1901 President Theodore Roosevelt and the Congress embarked on the establishment of the modern National Guard system. Id. at 341-43, 110 S.Ct. at 2423-24.
 Today, federal law continues to assure that "in addition to its National Guard, a State may provide and maintain at its own expense a defense force that is exempt from being drafted into the Armed Forces of the United States." Id. at 352, 110 S.Ct. at 2429 (citing 32 U.S.C. § 109(c) (1990)).
 
 
 [9]
 For similar reasons we do not involve ourselves in nonjusticiable areas of social policy. Amici argued at length that widely diffused gun ownership is good social policy. We are in no position to accept or reject this claim
 
 
 [10]
 Moreover, even if we determined that Hickman had standing to sue for violation of the Second Amendment, his suit would nevertheless fail because the Second Amendment is not incorporated against the states. Fresno Rifle & Pistol Club, Inc. v. Van De Kamp, 965 F.2d 723 (9th Cir.1992)