NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 06a0071n.06
Filed: January 26, 2006

**No. 04-3431**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| FRANCIS J. WARIN, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: SILER and GIBBONS, Circuit Judges, and LAWSON, District Judge[*]

    **DAVID M. LAWSON, District Judge.** In 1976, Francis J. Warin challenged his convictions of various federal firearms offenses on the grounds that the Second Amendment protects an individual's right to possess arms, and Congress' efforts to regulate and register firearms possession were unconstitutional. This court rejected those arguments; it held that "the Second Amendment guarantees a collective rather than an individual right," and concluded that Warin "ha[d] no private right to keep and bear arms under the Second Amendment which would bar his prosecution and conviction" for violating federal firearms statutes. *United States v. Warin*, 530 F.2d 103, 106-07 (6th Cir. 1976). Warin returns to this court with new firearms convictions but advances

_____

    [*]The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

the same argument.  As the court did twenty-nine years ago, we likewise today reject that argument

and affirm Warin's federal firearms convictions.  However, we vacate his sentence and remand for

resentencing under the now-advisory sentencing guidelines.  *See United States v. Booker*, 543 U.S.

220, 125 S. Ct. 738 (2005).

I.

The facts of this case strongly suggest that Warin invited this prosecution by conduct that

fairly can be characterized as provocative.  On May 19, 2003, the United States Attorney's Office

in Toledo, Ohio received a package addressed to Assistant United States Attorney, Lawrence Kiroff.

After scanning the package, security found that it contained a homemade .22 caliber gun and

silencer.  The package was sent by the defendant, Francis Warin, along with a letter.  Officials ran

a background check and determined that Warin had a past criminal history involving firearms.

Agents from the Bureau of Alcohol, Tobacco, and Firearms initiated an investigation.

Kiroff testified at trial that prior to receiving the package, he had handled a civil forfeiture

case involving some twenty-two guns that had been confiscated from Warin's residence during a

search in 1999.  Apparently, the search was conducted after Warin threatened to bring a bomb to an

FBI office.  Kiroff stated that sometime after he concluded the case, Warin arrived at Kiroff's office

requesting that he be arrested for possession of firearms.  Kiroff denied the request and told Warin

"to please go home and forget about this matter," J.A. at 97, but Warin was quite adamant.  Warin

then began to write Kiroff regularly and ultimately sent Kiroff the homemade gun and silencer.

On May 22, 2003, agents arrested Warin and searched his home pursuant to warrants issued

by a federal magistrate judge.  The search revealed six firearms, some forty thousand rounds of

ammunition, and an explosive device. Warin provided agents with a statement in which he admitted to mailing the firearm and silencer. Warin also told agents that he had been placed on probation in 1976 after he was convicted of carrying a machine gun into the federal courthouse in Toledo, Ohio, a felony offense.

On June 4, 2003, a federal grand jury returned a five-count indictment against the defendant. Count one charged Warin with possessing an unregistered .22 caliber gun in violation of 26 U.S.C §§ 5841, 5861(d), and 5871. Count two alleged that Warin possessed a silencer in connection with the firearm in violation of the same provisions. Count three charged Warin with mailing the firearm and silencer and having those items delivered to Lawrence J. Kiroff, an assistant United States attorney, which items could be concealed on the person in violation of 18 U.S.C. § 1715. Court four alleged that Warin previously had been convicted of a felony and therefore possessed a firearm in violation of 18 U.S.C. § 922(g)(1). Count five charged Warin with illegally possessing an additional firearm as a felon.

A bench trial was held on October 8, 2003. When the proofs concluded, Warin filed a written motion to dismiss pursuant to Federal Rule of Criminal Procedure 29, to which the government responded. On December 17, 2003, the district court denied Warin's motion and found him guilty of each charge in the indictment. A presentence report was prepared, and on February 17, 2004 Warin filed objections in which he asserted that his base offense level should be reduced for acceptance of responsibility, the evidence did not support enhancements for the number of weapons and possession of a destructive device, and the court should depart downward because of the defendant's age and health. On March 22, 2004, the district court sentenced Warin to thirty-

three months in prison on counts one, two, four, and five and twenty-four months on count three to run concurrently with the other counts. The district court further imposed a $2,000 fine, a $500 special assessment fee, and three years of supervised release. Warin filed a timely notice of appeal. He argues that the district court erred in denying his motion to dismiss because the Second Amendment, which he believes confers individual rights, is a complete defense to his crimes; and the district court improperly decided facts at the sentencing hearing that enhanced the defendant's Sentencing Guideline score.

## II.

This court reviews *de novo* the constitutional rulings of the district court. *United States v. Napier*, 233 F.3d 394, 397 (6th Cir. 2000). We review the sentencing issue for plain error because Warin did not present these arguments in the district court. Fed. R. Crim. P. 52(b); *United States v. Johnson,* 403 F.3d 813, 815 (6th Cir. 2005).

## A.

There is one point of the constitutional argument that the defendant and the government share: they both believe that the Second Amendment must be construed to confer individual – not collective – rights, a viewpoint espoused by the Fifth Circuit alone. *See United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001). However, this court has had several opportunities to reassess its position since *United States v. Warin* was decided in 1976 and has continued to hold to its view that the Second Amendment confers only collective rights. *See United States v. Bournes,* 339 F.3d 396, 397 (6th Cir. 2003); *United States v. Napier*, 233 F.3d 394, 402 (6th Cir. 2000); *United States v.*

*Baker*, 197 F.3d 211, 216 (1999); *United States v. Ables,* 167 F.3d 1021, 1027 (6th Cir. 1999). We subscribe to that interpretation as well.

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear arms, shall not be infringed." This circuit has repeatedly held that the right to bear arms is a collective one, and accordingly "there can be no serious claim to any express constitutional right of an individual to possess a firearm." *Bournes,* 339 F.3d at 397 (quoting *Warin,* 530 F.2d at 106). It is quite difficult to hold otherwise without reading the first two clauses out of the text of the amendment.

Despite this clear precedent, Warin asserts the Second Amendment as a complete defense to all charges in the indictment. He, like the defendant in *Bournes*, asks the court to reconsider its position in light of *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990), and find that the Second Amendment confers individual rights. In that case, the Court considered the term, "the people," found in the preamble, and the First, Second, Fourth, Ninth and Tenth Amendments to the Constitution, and stated that it "refers to a class of people who are part of a national community." *Id.* at 282. Warin contends that this *obiter dictum* requires this court to re-evaluate its interpretation of the Second Amendment. He claims the district court erred when it found that the Second Amendment afforded Warin no complete defense, denied his motion filed under Federal Rule of Criminal Procedure 29, and convicted him on each of the five counts.

However, in *Bournes*, this court stated its position with respect to changing its interpretation of the Second Amendment:

> Recognizing this authority and our well-entrenched rule that a panel of this court cannot overrule the published opinion of another panel unless an intervening

> Supreme Court decision mandates modification of the prior opinion, *see United States v. Ables*, 167 F.3d 1021, 1027 (6th Cir.1999), Bournes urges us to reconsider our holding in *Warin* in light of *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990). But whatever the value of dicta in that opinion referring to the Court's understanding of the Second Amendment's 'textual exegesis,' *id.* at 265, we have reaffirmed *Warin* on at least two occasions in the interim. . . . Without a subsequent *en banc* ruling to the contrary, we are therefore bound to apply *Warin* in this case.

*Bournes,* 339 F.3d at 397-98. Warin has not alleged here the presence of any of the factors that would permit this panel to overrule its previous decisions.

Moreover, extended discussion of the individual versus the collective rights model would serve no further purpose in this case because the Second Amendment would afford Warin no relief under either theory. Warin concedes that under this circuit's collective rights model the Second Amendment provides him no protection for his criminal conduct. Similarly, even under the individual rights model articulated in *Emerson,* the firearms statutes under which Warin was convicted would be upheld as they were in that case as "limited, narrowly tailored specific exceptions or restrictions for particular cases that are reasonable and not inconsistent with the right of Americans generally to individually keep and bear their private arms as historically understood in this country. . . . [I]t is clear that felons, infants, and those of unsound mind may be prohibited from possessing firearms." *Emerson,* 270 F.3d at 261. Warin makes no argument that the statutes he violated are somehow unreasonable.

Warin does, however, present a due process claim. He argues that the National Firearms Act, 26 U.S.C. § 5861(d), which requires him to register his firearms, is an improper application of the government's taxation powers. Like others before him, he relies on the Tenth Circuit's decision in *United States v. Dalton,* 960 F.2d 121 (10th Cir. 1992). Dalton, an attorney, argued to the court that

it was legally impossible for him to comply with the registration requirement of section 5861(d) because the statute mandates denial of all registration applications for firearms that are illegal to possess, and the machine gun Dalton received as a fee from a client was a prohibited weapon under the Firearm Owners' Protection Act. The *Dalton* court agreed. However, the *Dalton* impossibility defense was rejected in *United States v. Jones*, 976 F.2d 176 (4th Cir. 1992), where the court observed that a person can comply with the statutes simply "by refusing to deal in newly-made machine guns." *Id.* at 183.

This court declined to adopt *Dalton*'s reasoning in *United States v. Mise*, 240 F.3d 527, 530 (6th Cir. 2001), although the facts of that case were readily distinguished from *Dalton*'s facts where there was no showing that the defendant could not register the pipe bomb that was the object of the prosecution in that case. But the precise argument was squarely rejected in *United States v. Bournes*, where we stated:

> We take this occasion, involving a case with facts squarely on point with those in *Dalton*, to reject the reasoning of that opinion and, instead, follow our sister circuits in adopting the more compelling reasoning of *Jones*. We hold that compliance with the relevant provisions of both the National Firearms Act and the Firearms Owners' Protection Act is easily achieved: Bournes could have complied simply by electing not to possess the machine guns at issue in this case. Furthermore, the Constitution does not forbid making the same conduct illegal under two statutes, and the government is permitted to prosecute under either one.

*Bournes*, 339 F.3d at 399 (internal quotes and citation omitted).

In this case, Warin does not contend that he could not register the homemade guns for which he was prosecuted and convicted. His argument, therefore, has less appeal than Bournes' and is closer to the one made in *Mise*. In all events, there is no due process violation here that invalidates Warin's convictions.

B.

Warin argues on appeal that the district court erred when it failed to consider certain sentencing factors at the trial phase of the case but instead made factual findings on those matters at the sentencing hearing in violation of the rules handed down in *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

Using the November 1, 2003 Sentencing Guidelines, the district court determined Warin's base offense level to be 20 because he committed the offense while being a prohibited person. *See* U.S.S.G. § 2K2.1(a)(4)(B)(I). Four levels were added pursuant to U.S.S.G. § 2K2.1(b)(1)(B) because Warin's offense involved the possession of at least eight firearms during the commission of these offenses. Two additional points were added because Warin possessed a destructive device during the offense. *See* U.S.S.G. § 2K2.1(b)(3). With a criminal history category of I, the Guidelines imposed a range of 63 to 78 months. However, the district court granted Warin a two-level downward departure for acceptance of responsibility and further departed four levels for a combination of circumstances, including Warin's age and infirmity. At this level, Warin's guideline range was between 33 to 41 months imprisonment. The court sentenced Warin to thirty-three months imprisonment on counts one, two, four, and five, and twenty-four months on count three to run concurrently. The court imposed a $2,000 fine, two years of supervised release, and a special assessment fee of $500.

The precise argument based on a violation of Warin's Fifth and Sixth Amendment rights is raised for the first time on appeal. However, Warin's attorney filed written objections to the presentence report in which he stated that "it is important to note that only three firearms, plus a

homemade silencer, were objects of the indictment. The other firearms referred to in Paragraph 13 were not the subject of prosecution." J.A. at 31. The objections also stated that "[i]t is undisputed that the hand grenade was not included as a count in the indictment." J.A. at 32. He contends that these objections are sufficient to preserve his constitutional sentencing issues for appeal.

That argument may indeed be preserved, *see United States v. Strayhorn*, 250 F.3d 462, 467 (6th Cir. 2001) (holding that defendant preserved his *Apprendi* challenge to his sentence where he objected to the drug quantity determination at his plea and sentencing hearings and filed a written objection to the calculation of his base offense level in his presentence report, although he did not utter the words "due process" at either of these hearings), *overruled on other grounds by United States v. Leachman*, 309 F.3d 377 (6th Cir. 2002), but we need not decide that point because we find that the sentence must be vacated even under a plain error standard of review. Under the latter standard, the defendant must demonstrate (1) an error; (2) that was plain, meaning obvious or clear; (3) affected Warin's substantial rights; and (4) seriously affected the fairness, integrity or public reputation of the proceedings. *United States v. Oliver*, 397 F.3d 369, 378 (6th Cir. 2005).

This case was briefed and argued before the Supreme Court decided *Booker*, in which the Court determined that it must "excise" 18 U.S.C. § 3553(b)(1) to the extent that the section "require[d] sentencing courts to impose a sentence within the applicable Guidelines range (in the absence of circumstances that justify a departure)." *Booker*, 543 U.S. at __, 125 S. Ct. at 764. Warin satisfies the first prong of the plain error test because the district court sentenced him based on a higher quantity of guns than the amount found by the district court beyond a reasonable doubt. Moreover, this court held in *United States v. Barnett*, 398 F.3d 516 (6th Cir. 2005), that any pre-

*Booker* sentencing determination constitutes plain error because the Guidelines then were mandatory. The second prong is also met under the rule in *Booker*. *See Oliver*, 397 F.3d at 379. Third, the error plainly impacted Warin's substantial rights because it "affected the outcome of the district court proceedings." *United States v. Cotton*, 535 U.S. 625, 632 (2002). Finally the error affected the fairness, integrity, and reputation of the proceeding because the court imposed a more severe sentence than that supported by the verdict. *See Oliver*, 397 F.3d at 380. The weight of authority in this circuit requires that we vacate the sentence and remand "to accord the district court an opportunity to take another look at the sentence" in light of the now-advisory nature of the Guidelines. *United States v. McCraven*, 401 F.3d 693, 700 (6th Cir. 2005).

The sentence in this case was at the low end of the Guidelines range, which may have been compelled by the former mandatory nature of the Sentencing Guidelines. *See United States v. Hamm*, 400 F.3d 336, 340 (6th Cir. 2005) (reasoning that "[b]ased upon the district court's imposition of a sentence at the low end of the range and its apparent sympathy for Hamm, we believe that the court might have sentenced Hamm to fewer than 33 months in prison if it had felt that it were free to do so"). Our decision to vacate the sentence, however, is not based on a finding that the sentence is unreasonable or that a different disposition is required. Rather, we believe "[t]he better course . . . is to vacate [Warin's] sentence and remand for resentencing, thus affording the district court the opportunity to re-sentence him in the first instance. 'We would be usurping the discretionary power granted to the district courts by *Booker* if we were to assume that the district court would have given [the defendant] the same sentence post-*Booker*.'" *United States v. Barnett*, 398 F.3d 516, 530 (6th Cir. 2005) (quoting *Oliver*, 397 F.3d at 381 n. 3).

III.

For the reasons stated, we **AFFIRM** the defendant's conviction, **VACATE** his sentence, and **REMAND** for resentencing in light of *United States v. Booker*.