**UNITED STATES of America, Plaintiff,**

v.

**Vasel DJELAJ, Rade Pavlovic, Victor Berishaj, Defendants.**

**No. 92–CR–80797–DT.**

United States District Court,
E.D. Michigan, S.D.

Jan. 12, 1994.

Diane Donohue, Asst. U.S. Atty., Detroit, MI, for plaintiff.

Thomas V. Wilhelm, Bloomfield Hills, MI, for Djelaj.

Rafael Villarruel, Detroit, MI, for Pavlovic.

Mark E. Weaver, Birmingham, MI, for Berishaj.

### OPINION AND ORDER

ROSEN, District Judge.

### I. INTRODUCTION

Defendants Vasel Djelaj, Rade Pavlovic and Victor Berishaj have been indicted for knowingly possessing firearms on August 31, 1992, in violation of the National Firearms Act ("NFA"). More specifically, on that date Defendants were found in possession of Molotov cocktails which were not registered to them in the National Firearm Registration and Transfer Record as required by I.R.C. §§ 5841(b) and 5861(d).[1]

Defendants Djelaj and Pavlovic seek to dismiss the indictment against them by arguing that their Fifth Amendment due process rights have been infringed by I.R.C. § 5861(d). In particular, Defendants argue that because Michigan bans the possession of Molotov cocktails,[2] any attempt to register them would fail under federal law.[3] Because it would be impossible for them to get the weapons registered as required by I.R.C. § 5861(d), Defendants argue that they are being prosecuted unfairly.

After considering the briefs presented and the oral argument of counsel on December 9, 1993, the Court is now prepared to render a ruling on Defendants' motion. This Memorandum Opinion and Order sets forth that ruling.

### II. ANALYSIS

I.R.C. § 5861(d) is part of a comprehensive scheme to regulate dangerous weapons through Congress' taxing power. Nowhere does the NFA give Defendants or anyone else the affirmative right to possess items such as Molotov cocktails; rather, if one can possess such items legally under state law, then the NFA requires that they be registered and taxed. The NFA, then, allows the federal government to track and collect revenue off of dangerous weapons. Its registration provisions, which state that registration will be denied if the item in

---

**1.** I.R.C. § 5841(b) states: "Each manufacturer, importer, and maker shall register each firearm he manufactures, imports or makes. Each firearm transferred shall be registered to the transferee by the transferor."

I.R.C. § 5861(d) reads: "It shall be unlawful for any person— ... (d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record."

The Title 26 definition of firearms includes "destructive devices." I.R.C. § 5845(a). Section 5845(f) defines a destructive device to mean "any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellant charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device."

The parties do not dispute that the I.R.C. regulates Molotov cocktails, and that under its terms Defendants are required to register items such as Molotov cocktails.

**2.** M.C.L. § 750.211a states:

Any person who shall ... have in his possession any device which is designed to explode upon impact or with the application of heat or a flame, or which device is highly incendiary, with the intent to use the device unlawfully against the person or property of another is guilty of a felony. For the purposes of prosecution under this section, possession of such a device is prima facie evidence of the possessor's intent to use the device unlawfully against the person or property of another.

**3.** I.R.C. § 5812(a) states: "Applications [for transferring firearms] .shall be denied if the transfer, receipt, or possession of the firearm would place the transferee in violation of law." Similarly, I.R.C. § 5822 reads: "Applications [for making and registering firearms] shall be denied if the making or possession of the firearm would place the person making the firearm in violation of law."

question violates any law, also serve to put people like Defendants on notice that they should not possess certain weapons.

■ Defendants argue that they should not be tried under I.R.C. § 5861(d) because there was no way for them to comply with it. Defendants correctly point out that if they had registered their Molotov cocktails pursuant to that section, their registration applications would have been denied on the ground that the weapons were in violation of Michigan law. *See* I.R.C. §§ 5812, 5822. This Court believes, however, that although Defendants could not comply with both Michigan and federal law and keep the Molotov cocktails as well, this is not grounds for dismissing the indictment. Defendants had another available alternative; they could have complied with Michigan and federal law by not having Molotov cocktails in their possession in the first place.

Defendants cite *United States v. Dalton*, 960 F.2d 121 (10th Cir.1992) in support of their position that one cannot be convicted of a federal firearm law violation if complying with that law is impossible. In *Dalton*, defendant was an attorney who in 1989 received a converted machinegun as a legal fee from a client. Defendant was convicted of unlawfully possessing and transferring a firearm under I.R.C. § 5861. 960 F.2d at 122.

The *Dalton* court reversed his conviction. The court noted that in 1986 Congress passed the Firearms Owners' Protection Act, which amended the 1968 Gun Control Act. Included in the 1986 amendments is what is now codified at 18 U.S.C. § 922(*o*); this provision bans the possession of any machinegun which does not fall within certain excepted categories.[4] The court also cited in its reasoning I.R.C. § 5812, quoted *supra* n. 3, which states that registration applications will be denied if the weapon is illegally pos-

sessed by the applicant. *Dalton* held that because defendant's possession of the machinegun in violation of § 922(*o*) was undisputed, and because any application he made to register the firearm would have been denied under § 5812, "compliance with the registration requirements referred to in sections 5861(d) and (e) is impossible with this weapon." 960 F.2d at 123.[5] The court concluded by holding that it was fundamentally unfair to convict defendant for the failure to do a legally impossible act—registering the machinegun. 960 F.2d at 124.

Two more recent decisions, however, have disagreed with the interpretation of § 5861(d) offered by *Dalton*. In *United States v. Jones*, 976 F.2d 176 (4th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2351, 124 L.Ed.2d 260 (1993), the court upheld a conviction under the NFA of a defendant who had sold two converted machineguns to federal undercover agents. Defendant challenged the conviction on several grounds, one of which was that it was unconstitutional to convict a person for failing to do a legally impossible act. More specifically, defendant argued that § 922(*o*) repealed the NFA in part and that, alternatively, general fairness considerations militated against convictions based on actions that would have been legally impossible. 976 F.2d at 183.

The *Jones* court rejected both arguments: "In the absence of some affirmative showing of an intention to repeal, the only permissible justification for repeal by implication is when the earlier and later statutes are *irreconcilable*." *Morton v. Mancari*, 417 U.S. 535, 550, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974) (emphasis added). Here, neither the statutory language nor the legislative history of the 1986 amendment of the Gun Control Act affirmatively expresses a congressional desire to except machineguns from the earlier established

---

**4.** 18 U.S.C. § 922(*o*) states:

(1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.
(2) This subsection does not apply with respect to—
  (A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State,

or a department, agency or political subdivision thereof; or
  (B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.

**5.** The *Dalton* court noted that the government could have brought charges under § 922(*o*) against defendant, but instead, inexplicably, chose to charge under § 5861. 960 F.2d at 123.

requirements of the National Firearms Act. *And the two statutes are not irreconcilable because, despite Jones' assertions to the contrary, Jones can comply with both acts. While he may not be able to register newly-made machineguns in which he deals, neither act requires him to deal in such guns. Simply put, Jones can comply with both acts by refusing to deal in newly-made machineguns. . . . Similarly, Jones' ability to comply with both the National Firearms Act and the Gun Control Act, as amended, vitiates his argument about fundamental fairness.*

976 F.2d at 183 (bold emphasis in original; underlining emphasis added). The Seventh Circuit has recently adopted the reasoning of *Jones* on the relationship of § 922(o) and the NFA in toto. *United States v. Ross*, 9 F.3d 1182, 1194–95 (7th Cir.1993) ("We find the analysis applied in *Jones* to be well-reasoned. . . .").

The Court finds the analysis in *Jones* and *Ross* clearly superior to that of *Dalton.* Just as the defendant in *Jones* could have complied with both the NFA and § 922(o) by not dealing in newly-made machineguns, so, too, Defendants in this case could have complied with NFA § 5861(d) and Michigan's ban on Molotov cocktails by not possessing those destructive devices in the first place. *Dalton*'s impossibility analysis is therefore flawed, and this Court declines to apply it. Furthermore, this Court believes that there is nothing fundamentally unfair with holding Defendants to answer for their breach of federal law regardless of what state law may say. If this were not the case, federal criminal statutes could be enforced only in states which agreed with and accepted them. This is a preposterous contention.

Defendants' arguments to dismiss the indictment,[6] then, when boiled down to their essence, collapse under simple common sense. Their motion must be denied.

### III. CONCLUSION

For the foregoing reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendants' motion to dismiss the indictment is DENIED.

---

6. Defendants do not argue that any attempt to register the Molotov cocktails would have violated their self-incrimination rights by putting them in jeopardy of state criminal prosecution. Even were they to make this argument, Congress has provided that:

>No information or evidence obtained from an application, registration, or records required to be submitted or retained by a natural person in order to comply with any provision of [the NFA] shall . . . be used directly or indirectly, as

evidence against that person in a criminal proceeding with respect to a violation of law occurring prior to or concurrently with the filing of the application or registration or the compiling of the records containing the information or evidence.

I.R.C. § 5848(a). The statute, therefore, dictates that had the Defendants applied for registration of their Molotov cocktails, their applications could not be used as evidence of their prior or concurrent illegal possession.