**UNITED STATES of America,**
**Plaintiff,**

v.

**Robert BOURNES, Defendant.**

No. 99–CR–80469.

United States District Court,
E.D. Michigan,
Southern Division.

July 18, 2000.

Diane Marion, Asst. U.S. Atty., Detroit, MI, for plaintiff.

Walter A. White, Milan, MI, for defendant.

### OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT

ROSEN, District Judge.

### I. INTRODUCTION

Defendant Robert Bournes is charged in a one-count indictment with unlawful possession of two unregistered machine guns, in violation of 26 U.S.C. § 5861(d). On March 28, 2000, Defendant brought a Motion to Dismiss Indictment, as well as a Motion for Jury Instructions regarding various defenses he has asserted to the charges against him. In support of these two motions, Defendant raises four arguments: (1) that the allegations of the indictment lack a sufficient connection to interstate commerce to warrant federal prosecution; (2) that Defendant's membership in a division of the "Michigan Militia Corps Wolverines" and his possession of military-style weaponry preclude his prosecution under the Second Amendment to the U.S. Constitution; (3) that the Government waived its right to prosecute Defendant under 26 U.S.C. § 5861(d) by refusing to allow him to register the machine guns in question and pay the required taxes; and (4) that the combination of 26 U.S.C. § 5861(d) and 18 U.S.C. § 922(o), which prohibits the transfer or possession of machine guns, operates to violate the Second Amendment by banning Defendant's ownership of an entire class of firearms. The Government responded to these motions on April 4, 2000.

The Court has reviewed Defendant's motions and the Government's response, and has considered the arguments of counsel at a hearing held on July 13, 2000. As discussed below, each of Defendant's arguments is defeated by the overwhelming weight of case law authority, including certain binding decisions of the Sixth Circuit Court of Appeals and prior rulings of this Court. Throughout Defendant's lengthy motion to dismiss and brief in support, he generally fails to acknowledge, let alone distinguish, these controlling precedents, and the Court likewise finds no basis for deviating from the existing case law on point. Accordingly, Defendant's motion to dismiss the indictment must be denied.

### II. ANALYSIS

**A. Defendant Is Subject to Federal Prosecution for Allegedly Failing to Register Machine Guns, Even If These Weapons Did Not Travel in Interstate Commerce.**

As his first basis for seeking dismissal of the charges against him, Defendant argues that the federal statutory ban on possession of machine guns, as codified at 18 U.S.C. § 922(o), exceeds the limited legislative power conferred upon Congress under the Commerce Clause of the U.S. Constitution. In response, the Govern-

ment first points out that Defendant has been charged under 26 U.S.C. § 5861(d), a provision of the Internal Revenue Code, and not under 18 U.S.C. § 922(*o*). The Government further asserts that, in any event, § 922(*o*) has been upheld as a valid exercise of congressional power under the Commerce Clause, notwithstanding the Supreme Court's decision in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), striking down a different firearm prohibition found at 18 U.S.C. § 922(q). The Court finds both of the Government's arguments persuasive.

First, it bears emphasis that Defendant is charged with possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d),[1] and not with unlawful possession of a machine gun. Thus, for present purposes, it does not matter whether Congress has the power to enact an outright ban on the possession of machine guns—as it has done in 18 U.S.C. § 922(*o*)—so long as the Constitution confers upon Congress the distinct power to regulate machine guns by requiring that they be registered. As the Sixth Circuit has explained, "one may not attack his conviction of one ... offense[ ] by questioning the constitutionality of provisions relating to another offense." *United States v. Warin*, 530 F.2d 103, 108 (6th Cir.), *cert. denied*, 426 U.S. 948, 96 S.Ct. 3168, 49 L.Ed.2d 1185 (1976).

Because 26 U.S.C. § 5861(d) is part of the Internal Revenue Code, the courts naturally have looked to the taxing power, U.S. Const., Art. I, § 8, cl. 1, as a possible source of congressional authority for requiring the registration of firearms. Soon after the enactment of the National Firearms Act of 1934 ("NFA"), the Supreme Court relied upon this constitutional power to lay taxes in upholding a provision of the NFA imposing a $200 annual license tax

on firearms dealers. *See Sonzinsky v. United States*, 300 U.S. 506, 57 S.Ct. 554, 81 L.Ed. 772 (1937). While conceding that this $200 tax, like any other tax, "is in some measure regulatory," since it "interposes an economic impediment to the activity taxed as compared with others not taxed," the Court nevertheless observed that "an Act of Congress which on its face purports to be an exercise of the taxing power is not any the less so because the tax is burdensome or tends to restrict or suppress the thing taxed." *Sonzinsky*, 300 U.S. at 513, 57 S.Ct. at 555–56.

Following *Sonzinsky*, numerous courts have held that the registration provisions of the NFA, including § 5861(d), are permissible incidents to the legislative taxing power, because registration facilitates the collection of taxes on the making and transfer of firearms.[2] *See, e.g., United States v. Birmley*, 529 F.2d 103, 106–07 (6th Cir.1976); *United States v. Dodge*, 61 F.3d 142, 145–46 (2d Cir.), *cert. denied*, 516 U.S. 969, 116 S.Ct. 428, 133 L.Ed.2d 343 (1995); *United States v. Ross*, 458 F.2d 1144, 1145 (5th Cir.), *cert. denied*, 409 U.S. 868, 93 S.Ct. 167, 34 L.Ed.2d 118 (1972). The Fifth Circuit explained:

> The test of validity is whether on its face the tax operates as a revenue generating measure and the attendant regulations are in aid of a revenue purpose.... Section 5861(d) making possession of an unregistered weapon unlawful is part of the web of regulation aiding enforcement of the transfer tax provision in § 5811. Having required payment of a transfer tax and registration as an aid in collection of that tax, Congress under the taxing power may reasonably impose a penalty on possession of unregistered weapons. Such a penalty imposed on

---

1. Under this provision, part of the National Firearms Act of 1934 as amended by the Gun Control Act of 1968, it is "unlawful for any person ... to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d). The Act expressly includes machine guns in its definition of "fire-

arms." 26 U.S.C. § 5845(a)(6). In this case, the indictment charges that Defendant possessed the two machine guns in question, but that they were not registered to him in the national firearms record.

2. These taxes are levied under § 5811 and § 5821 of the NFA, respectively.

transferees ultimately discourages the transferor on whom the tax is levied from transferring a firearm without paying the tax.

*Ross,* 458 F.2d at 1145 (citations and footnote omitted).

However, as noted above, and as discussed at greater length below, Congress has altogether banned the possession or transfer of machine guns. Further, under the NFA, the Secretary of the Treasury may not approve an application for the making or transfer of a firearm—and hence may not collect a tax on this making or transfer—if the person seeking approval would thereby be violating the law. *See* 26 U.S.C. §§ 5812(a), 5822. This has led some to argue that § 5861(d) no longer may be justified as an exercise of the taxing power, at least as it pertains to prohibited firearms such as machine guns, because it is impossible for the Government to collect any additional taxes on the making or transfer of such outlawed weapons.

The vast majority of courts, including this one, have emphatically rejected this or similar arguments. In *United States v. Djelaj,* 842 F.Supp. 278 (E.D.Mich.1994), the defendants were charged with violating § 5861(d) by possessing Molotov cocktails which had not been registered to them. They pointed out that Michigan law banned the possession of Molotov cocktails, and that any attempt to register these weapons, therefore, would not have been permitted under the NFA. The defendants then argued that their due process rights would be infringed if they were prosecuted for violating § 5861(d), as they could not possibly have complied with the federal statute. This Court rejected this "impossibility" argument, observing that the defendants "had another available alternative; they could have complied with Michigan and federal law by not having Molotov cocktails in their possession in the first place." 842 F.Supp. at 280.

In so ruling, this Court rejected the reasoning of a case also relied upon by Defendant here, *United States v. Dalton,*

960 F.2d 121 (10th Cir.1992). *Dalton* had accepted the defense of "impossibility," concluding that it was fundamentally unfair to convict a defendant for failing to do a legally impossible act—in that case, registering a machine gun. *Dalton,* 960 F.2d at 124. As this Court noted in *Djelaj,* however, other courts have disagreed with *Dalton*'s analysis. *Djelaj,* 842 F.Supp. at 280–81 (citing *United States v. Jones,* 976 F.2d 176, 183 (4th Cir.1992), and *United States v. Ross,* 9 F.3d 1182, 1192–94 (7th Cir.1993)). In *Jones,* for example, the Fourth Circuit reasoned that it was not impossible for the defendant to comply with § 5861, but that he could do so simply by "refusing to deal in newly-made machine guns." *Jones,* 976 F.2d at 183. Upon reviewing these various precedents, this Court found that "the analysis in *Jones* and *Ross* [is] clearly superior to that of *Dalton.*" *Djelaj,* 842 F.Supp. at 281.

In the years since this Court decided *Djelaj,* the other circuits have uniformly declined to endorse the Tenth Circuit's analysis in *Dalton,* and instead have adopted the Fourth Circuit's ruling in *Jones.* For example, in *United States v. Ardoin,* 19 F.3d 177, 180 & n. 4 (5th Cir.), *cert. denied,* 513 U.S. 933, 115 S.Ct. 327, 130 L.Ed.2d 287 (1994), the Fifth Circuit elected to follow *Jones* over *Dalton,* reasoning that the defendant in that case could have avoided prosecution for failing to register and pay taxes on illegal machine guns by refusing to accept these weapons in the first instance. Several other courts have concurred in this reasoning. *See, e.g., United States v. Elliott,* 128 F.3d 671, 672 (8th Cir.1997); *United States v. Gresham,* 118 F.3d 258, 263 (5th Cir.1997) ("If it was legally impossible for Gresham to register the pipe bomb and thereby comply with the NFA, he could avoid prosecution by not engaging in the illegal activity."), *cert. denied,* 522 U.S. 1052, 118 S.Ct. 702, 139 L.Ed.2d 645 (1998); *Hunter v. United States,* 73 F.3d 260, 261–62 (9th Cir.1996); *United States v. Rivera,* 58 F.3d 600, 601–02 (11th Cir.1995). In addition, Judge Gadola of this Court recently

relied on *Djelaj* in rejecting *Dalton*. *United States v. Wolfe*, 32 F.Supp.2d 945, 955 (E.D.Mich.1999).

More specifically, as to the question of congressional power to enact § 5861(d), the courts have found that the NFA's registration provisions may still be upheld as a valid exercise of congressional taxing power, despite the fact that the Government no longer accepts applications to register certain types of weapons. The *Ardoin* Court explained:

> [The Bureau of Alcohol, Tobacco, and Firearms ("ATF") ] has the authority to tax now-illegal machineguns. Although it chooses not to allow tax payments or registration, it still has the authority to do so. Thus, the basis for ATF's authority to regulate—the taxing power—still exists; it is merely not exercised.

*Ardoin*, 19 F.3d at 180. Similarly, in *Hunter*, the Ninth Circuit concluded:

> We adopt the rationale of *Jones*, that requiring those who possess machine guns to register them is in aid of the taxing power even if the government no longer taxes possession. The manufacture of machine guns continues to be taxed, and knowing the chain of possession of a firearm would help the government determine who made it; thus, requiring registration for possession still facilitates taxation.

*Hunter*, 73 F.3d at 262; *see also Dodge*, *supra*, 61 F.3d at 146 ("The registration of the transfer of firearms when there is no tax immediately due assists the government in the collection of taxes by creating a record to track the firearms from one party to another and aids in the collection of taxes arising from subsequent, non-exempt transfers."). Thus, just as this Court previously found *Jones* more persuasive than *Dalton*, it again concludes that it should follow *Jones*, as well as the great weight of authority from other circuits, in holding that § 5861(d) represents a permissible exercise of Congress's taxing power.

In any event, even if this Court were to conclude that the NFA's registration requirements bear no reasonable relationship to the taxing power, controlling Sixth Circuit precedent nevertheless indicates that § 5861(d) could be upheld as within Congress's power to regulate interstate commerce. As noted earlier, the lynchpin of Defendant's argument is that 18 U.S.C. § 922(o) exceeds the legislative power of Congress under the Commerce Clause. Yet, this Court expressly concluded otherwise in *United States v. Hunter*, 843 F.Supp. 235, 241–49 (E.D.Mich.1994). Although Defendant fails to address *Hunter*, he evidently contends that all such decisions handed down before the Supreme Court's 1995 ruling in *Lopez, supra*, are now open to question.

However, in *United States v. Beuckelaere*, 91 F.3d 781, 784 (6th Cir.1996), a post-*Lopez* decision, the Sixth Circuit squarely affirmed the constitutionality of § 922(o) as "a proper exercise of the authority granted to Congress under the Commerce Clause." In so holding, the Court considered *Lopez* at length, observing that the Supreme Court's ruling turned upon its determination that the statute in question, 18 U.S.C. § 922(q), "sought to regulate an activity which by its nature was purely intrastate and could not substantially affect commerce even where incidents were aggregated together." *Beuckelaere*, 91 F.3d at 784 (citing *Lopez*, 514 U.S. at 559–61, 115 S.Ct. at 1630–31). In contrast, the Sixth Circuit, quoting this Court's decision in *Hunter*, found that " § 922(o) regulates the 'extensive, intricate, and definitely national market for machineguns' by prohibiting the transfer and possession of machineguns acquired after May 19, 1986." *Beuckelaere*, 91 F.3d at 784 (quoting *Hunter*, 843 F.Supp. at 249).

In an effort to distinguish *Beuckelaere*, Defendant argued at the July 13 hearing that his alleged possession of the machine guns at issue here was purely intrastate in character because, while he apparently obtained certain parts through interstate channels, these mere parts did not become

actual weapons until he assembled them together with certain critical components he had manufactured himself wholly within the State of Michigan. As an initial matter, the statutory definition of a "machinegun," which governs the use of that term in both 18 U.S.C. § 922(o) and 26 U.S.C. § 5861(d), encompasses both the assembled weapon and its constituent parts:

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and *any combination of parts from which a machinegun can be assembled* if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b) (emphasis added). Thus, even if § 922(o) included an express jurisdictional element—which it does not—requiring that the machine gun in question must have a connection with or effect on interstate commerce, it is by no means clear that this element would not be satisfied through a showing that many of the principal components of the weapon traveled in interstate commerce. *Cf. United States v. Gresham*, 118 F.3d 258, 265 (5th Cir.1997) (holding that "the jurisdictional nexus of § 922(g)(1) [*i.e.*, the felon-in-possession statute] may be satisfied by proof that the component parts of the firearm traveled in interstate commerce, rather than the firearm itself"), *cert. denied*, 522 U.S. 1052, 118 S.Ct. 702, 139 L.Ed.2d 645 (1998); *United States v. Verna*, 113 F.3d 499, 503 (4th Cir.) (holding that, to sustain the defendant's conviction under § 922(g) for possessing a home-made bomb, "[i]t is simply not necessary ... that each and every individual part of the bomb itself have traveled across state lines"), *cert. denied*, 522 U.S. 354, 118 S.Ct. 354, 139 L.Ed.2d 275 (1997).

More importantly, the case law makes clear that the constitutionality of § 922(o) simply does not turn upon whether the possession of a machine gun in a particular case might have been purely intrastate in character. As this Court pointed out in *Hunter*, "Congress may bar purely intrastate activity—such as loan sharking, or, in this case, machinegun possession—if it was reasonable in believing that such activity in fact burdens interstate commerce." *Hunter*, 843 F.Supp. at 244. In support of this conclusion, this Court quoted the Supreme Court's observation that "[w]here the *class of activities* is regulated and that *class* is within the reach of federal power, the courts have no power to excise, as trivial, individual instances of the class." *Hunter*, 843 F.Supp. at 244 (quoting *Perez v. United States*, 402 U.S. 146, 154, 91 S.Ct. 1357, 1361, 28 L.Ed.2d 686 (1971) (internal quotations and citation omitted)).

Likewise, the Sixth Circuit held in *Beuckelaere* that the broad federal ban on possession of machine guns, whether interstate or intrastate, does not exceed the authority of Congress under the Commerce Clause. Rather, the Court found that Congress had a "rational basis to conclude that federal regulation of intrastate incidents of transfer and possession of machineguns is essential to effective control of interstate incidents of traffic in machineguns." *Beuckelaere*, 91 F.3d at 786; *see also United States v. Franklyn*, 157 F.3d 90, 96 (2d Cir.1998) (noting that "Congress is authorized to regulate individual instances of purely intrastate activity where the cumulative effect of such activity would substantially affect interstate commerce," and finding that § 922(o) is a "reasonable measure for choking off the traffic in machine guns, which may be constricted on the supply side through prohibition of transfers as well as on the demand side by criminalizing possession"), *cert. denied*, 525 U.S. 1112, 119 S.Ct. 887, 142 L.Ed.2d 786 (1999); *United States v. Kenney*, 91 F.3d 884, 891 (7th Cir.1996) ("The possession of a machine gun, because of its relation to the closely regulat-

ed interstate market in machine guns, can not be considered purely local or noncommercial."). Consequently, the constitutionality of § 922(*o*) is not undermined through its application to wholly "intrastate" possession of machine guns.

Plainly, if Congress may invoke its Commerce Clause power to altogether ban machine guns through § 922(*o*), even where the possession of a machine gun in a particular case is alleged to be wholly "intrastate" in nature, it may use this same power to merely regulate these weapons through § 5861(d). Not surprisingly, several courts have so held, citing Congress's taxing power and its power to regulate interstate commerce as alternate bases for upholding the constitutionality of § 5861(d). *See, e.g., Ardoin,* 19 F.3d at 180; *Jones,* 976 F.2d at 184. Therefore, this Court holds, in accordance with the great weight of authority, that § 5861(d) does not exceed the scope of federal legislative power.

**B. Defendant's Prosecution for Allegedly Failing to Register Machine Guns Would Not Violate His Second Amendment Rights as a Member of the Private "Michigan Militia Corps Wolverines."**

 Defendant's next challenge to the indictment rests upon the language of the Second Amendment, which provides in its entirety:

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. Const. amend. II. Defendant states that he is a Gunnery Sergeant in a private militia, the "Michigan Militia Corps Wolverines." Accordingly, as a militia member, he argues that the requirement that he register his firearms constitutes an unlawful infringement upon his rights under the Second Amendment.

As support for this contention, Defendant points to the most recent Supreme Court decision squarely addressing the Second Amendment, *United States v. Mil-*

*ler,* 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939). In *Miller,* the Court reversed the dismissal on Second Amendment grounds of an indictment charging the defendants with violating the NFA by transporting an unregistered double barrel shotgun in interstate commerce. Upon surveying the historical developments preceding the adoption of the Second Amendment, the Court found that this constitutional provision was intended to "assure the continuation and render possible the effectiveness of" militias maintained by the various States. 307 U.S. at 178, 59 S.Ct. at 818. The Court then concluded that the weapons at issue in *Miller* did not advance this purpose:

In the absence of any evidence tending to show that possession or use of a "shotgun having a barrel of less than eighteen inches in length" at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument. Certainly it is not within judicial notice that this weapon is any part of the ordinary military equipment or that its use could contribute to the common defense.

307 U.S. at 178, 59 S.Ct. at 818.

Seizing upon this language, Defendant here argues that the belt fed machine gun and 9 millimeter submachine gun mentioned in the present indictment are "part of the ordinary military equipment" of the United States and other armed forces, and hence are encompassed within the Second Amendment right to keep and bear arms. Once again, however, Defendant's argument is foreclosed by binding Sixth Circuit precedent.

Specifically, in *Warin, supra,* the Sixth Circuit considered a claim that the "necessary implication" of the above-quoted language in *Miller* is that a militia member "may possess any weapon having military capability and that application of 26 U.S.C. § 5861(d) to such a person violates the

Second Amendment." *Warin,* 530 F.2d at 105. The Sixth Circuit first explained that *Miller,* properly construed, lends no support to this proposition:

> In *Miller* the Supreme Court did not reach the question of the extent to which a weapon which is "part of the ordinary military equipment" or whose "use could contribute to the common defense" may be regulated. In holding that the absence of evidence placing the weapon involved in the charges against Miller in one of these categories precluded the trial court from quashing the indictment on Second Amendment grounds, the Court did not hold the converse—that the Second Amendment is an absolute prohibition against all regulation of the manufacture, transfer and possession of any instrument capable of being used in military action.

530 F.2d at 105–06; *see also United States v. Rybar,* 103 F.3d 273, 286 (3d Cir.1996) ("[H]owever clear the [*Miller*] Court's suggestion that the firearm before it lacked the necessary military character, it did not state that such character alone would be sufficient to secure Second Amendment protection."), *cert. denied,* 522 U.S. 807, 118 S.Ct. 46, 139 L.Ed.2d 13 (1997). The *Warin* Court further observed that it would be untenable to read *Miller* as recognizing a broad Second Amendment prohibition against the regulation of military-style weapons:

> Within a few years after *Miller v. United States* was announced the First Circuit dealt with arguments similar to those made by Warin in the present case. In *Cases v. United States,* 131 F.2d 916 (1st Cir.1942), *cert. denied sub nom., Velazquez v. United States,* 319 U.S. 770, 63 S.Ct. 1431, 87 L.Ed. 1718 (1943), the court held that the Supreme Court did not intend to formulate a general rule in *Miller,* but merely dealt with the facts of that case. The court of appeals noted the development of new weaponry during the early years of World War II and concluded that it was not the intention of the Supreme Court to hold that the Second Amendment pro-

hibits Congress from regulating any weapons except antiques "such as a flintlock musket or a matchlock harquebus." 131 F.2d at 922. If the logical extension of the defendant's argument for the holding of *Miller* was inconceivable in 1942, it is completely irrational in this time of nuclear weapons.

*Warin,* 530 F.2d at 106.

Having rejected the defendant's proposed construction of *Miller,* the Sixth Circuit turned to the specific test announced by the *Miller* Court: namely, whether the firearm possession in question bears some "reasonable relationship to the preservation or efficiency of a well regulated militia." 530 F.2d at 106 (quoting *Miller,* 307 U.S. at 178, 59 S.Ct. at 818). The Court cited two reasons for concluding that the defendant's possession of a 9 millimeter submachine gun did not satisfy this standard. First, the defendant could at best be characterized as a member of a "sedentary militia," because he was merely subject to enrollment in the Ohio state militia, but was not an active member. 530 F.2d at 106. Next, the Court found "absolutely no evidence that a submachine gun in the hands of an individual 'sedentary militia' m[e]mber would have any, much less a 'reasonable relationship,'" to the maintenance or efficiency of a well-regulated militia. 530 F.2d at 106 (citation omitted). Accordingly, the Court held that "the defendant has no private right to keep and bear arms under the Second Amendment which would bar his prosecution and conviction for violating 26 U.S.C. § 5861(d)." 530 F.2d at 106–07.

Although Defendant utterly fails to address *Warin,* he nevertheless suggests two possible bases for distinguishing its holding. First, unlike the defendant in *Warin,* who was a member only of a "sedentary militia," Defendant here alleges that he is an active member of a private militia, the "Michigan Militia Corps Wolverines." Second, Defendant asserts that, if given the opportunity, he could present evidence that his possession of the two machine

guns in question is reasonably related to the preservation and efficiency of the "well-regulated" militia of which he is a member. The Court finds both of these proposed distinctions unavailing.

Beginning with the second of these points, the Court notes at the outset that Defendant has failed to suggest what sort of evidence he might offer to show that his possession of the particular two machine guns listed in the indictment was reasonably related to the preservation and efficiency of the "Michigan Militia Corps Wolverines." A mere allegation "that these weapons are susceptible to military use is insufficient to establish such a relationship." *United States v. Hale,* 978 F.2d 1016, 1020 (8th Cir.1992), *cert. denied,* 507 U.S. 997, 113 S.Ct. 1614, 123 L.Ed.2d 174 (1993). Rather, Defendant must show that he possessed machine guns "in preparation for a military career," and not "simply on a frolic of his own and without any thought or intention of contributing to the efficiency of the well regulated militia which the Second Amendment was designed to foster as necessary to the security of a free state." *Cases,* 131 F.2d at 923; *see also Gillespie v. City of Indianapolis,* 185 F.3d 693, 711 (7th Cir.1999) (stating the relevant test as whether there is "a nexus between the firearms disability imposed by the statute and the operation of state militias"), *cert. denied,* —— U.S. ——, 120 S.Ct. 934, 145 L.Ed.2d 813 (2000). It is no easy task to meet this burden; indeed, in the decades since *Miller* was decided, no federal court has found the requisite "reasonable relationship" between a particular instance of weapon possession and a well-regulated militia. *See United States v. Wright,* 117 F.3d 1265, 1274 n. 17 (11th Cir.) (noting this fact), *cert. denied,* 522 U.S. 1007, 118 S.Ct. 584, 139 L.Ed.2d 422 (1997), *vacated in part on other grounds,* 133 F.3d 1412 (11th Cir.1998); *Hale,* 978 F.2d at 1020 (same).

In any event, even assuming Defendant could overcome this substantial evidentiary obstacle, he still would confront the additional burden of establishing his membership in a "well regulated Militia" of the

sort contemplated by the Second Amendment. Although Defendant points to his position in the private "Michigan Militia Corps Wolverines," the courts have uniformly held that Second Amendment protection does not extend to such private or "unorganized" militias. *See, e.g., Wright,* 117 F.3d at 1271–74; *Hale,* 978 F.2d at 1020; *United States v. Oakes,* 564 F.2d 384, 387 (10th Cir.1977), *cert. denied,* 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521 (1978). Moreover, as noted earlier, the Sixth Circuit held in *Warin* that an individual's mere eligibility for membership in a state-sponsored militia does not suffice to confer Second Amendment protection. *See Warin,* 530 F.2d at 106. Finally, the Government points out that Defendant is expressly excluded from Michigan's "unorganized militia," and thus is not subject to enrollment in the State's "organized militia," because he is over the maximum age of 60 by some seven years. *See Mich. Comp.Laws* § 32.509. Therefore, the Court rejects Defendant's appeal to *Miller* and the "well regulated Militia" language of the Second Amendment as a basis for seeking dismissal of the indictment.

## C. The Government's Refusal to Permit Registration of Machine Guns and to Accept Payment of the Applicable Taxes for Such Weapons Does Not Preclude Defendant's Prosecution under 26 U.S.C. § 5861(d).

■ Defendant next argues that the Government has forfeited its right to prosecute him under 26 U.S.C. § 5861(d) for failing to register machine guns, because the Government denied him any opportunity to register these weapons. In making this argument, Defendant initially alludes to such notions as waiver and the Fifth Amendment right against self-incrimination. Yet, as support for his position, Defendant relies exclusively on the "impossibility" defense as addressed by the Tenth Circuit in *Dalton, supra.*

As discussed earlier, this Court has previously rejected the reasoning in *Dalton,*

and sees no reason to reach a different conclusion here.[3] Simply stated, the dilemma confronted by Defendant was of his own making, and could have been avoided if he had refrained from possessing outlawed machine guns in the first instance. Thus, the Court finds that the Government's refusal to permit Defendant to register machine guns does not operate to bar Defendant's prosecution for possessing unregistered machine guns.

## D. The Federal Ban on Machine Gun Possession and Registration Does Not Violate Defendant's Rights under the Second Amendment.

■ Finally, in addition to the militia-based argument addressed earlier, Defendant asserts that the combination of federal laws found at 26 U.S.C. § 5861(d) and 18 U.S.C. 922(o) operates to prohibit him from possessing an entire class of weapons, and thereby infringes his purported individual right under the Second Amendment to keep and bear arms. Once again, however, Defendant's argument rests almost exclusively on select passages from law review articles, while notably overlooking or neglecting to reconcile the controlling case law. When Defendant's contention is tested against these binding precedents, it is clear that it fails on a number of levels.

First, it is important to recall that the Government seeks to prosecute Defendant for possessing unregistered firearms in violation of 26 U.S.C. § 5861(d), and not for mere possession of machine guns in violation of 18 U.S.C. § 922(o). Thus, Defendant is not necessarily properly situated to challenge the outright federal ban on machine gun possession. Nevertheless, because federal law effectively prevents Defendant from complying with 26 U.S.C.

§ 5861(d) by registering any machine guns in his possession, the Court will assume, for present purposes, that Defendant has standing to bring his broad Second Amendment challenge to the federal ban on machine gun possession.

Turning to the merits of this challenge, Defendant quickly runs afoul of the well-established principle that the Second Amendment does not confer a broad right to unregulated possession of any and all types of weapons. The Supreme Court's *Miller* decision plainly demonstrates this point, as the Court reinstated an indictment charging the defendants with unlawfully transporting an unregistered double barrel shotgun. In addition, as discussed earlier, the Court established the general contours of the Second Amendment right, holding that it extends only to the keeping and bearing of arms that have "some reasonable relationship to the preservation or efficiency of a well regulated militia." *Miller*, 307 U.S. at 178, 59 S.Ct. at 818. This Court already has concluded that Defendant cannot satisfy this test with respect to the weapons listed in the indictment.

Since *Miller* was decided, the courts have uniformly rejected claims that federal bans on certain classes of firearms—including the federal ban on machine guns set forth at 18 U.S.C. § 922(o)—violate the Second Amendment. *See, e.g., Warin*, 530 F.2d at 106–08; *Wright*, 117 F.3d at 1271–74; *Rybar*, 103 F.3d at 285–86; *Hale*, 978 F.2d at 1019–20; *Oakes*, 564 F.2d at 387. Indeed, the Court is aware of no case law to the contrary, and Defendant has not identified any decisions that support his position. As the Sixth Circuit has explained, "[e]ven where the Second Amendment is applicable, it does not constitute an absolute barrier to the congressional regu-

---

**3.** In addition, in the passage of *Dalton* quoted by Defendant, the Tenth Circuit relies heavily on a District Court ruling in *United States v. Rock Island Armory, Inc.*, 773 F.Supp. 117 (C.D.Ill.1991). The Government correctly observes that *Rock Island Armory* can no longer be considered good law, as its reasoning was rejected by the Court of Appeals for the Circuit in which *Rock Island Armory* was decided. *See United States v. Ross*, 9 F.3d 1182, 1192–94 (7th Cir.1993) (choosing to follow the Fourth Circuit's ruling in *Jones, supra,* over the decisions in *Dalton* and *Rock Island Armory* ), vacated on other grounds, 511 U.S. 1124, 114 S.Ct. 2129, 128 L.Ed.2d 860 (1994).

lation of firearms." *Warin,* 530 F.2d at 107. Defendant has failed to suggest a principled basis for this Court to acknowledge the limited nature of Second Amendment rights as a general matter—a construction announced by the Supreme Court in *Miller,* and uniformly adhered to in the subsequent decisional law—while still permitting Defendant to invoke the protection of the Second Amendment under the circumstances presented here.

More generally, Defendant's broad appeal to the Second Amendment is defeated by the Sixth Circuit's express holding that this constitutional provision confers "a collective rather than an individual right." *Warin,* 530 F.2d at 106; *see also Hickman v. Block,* 81 F.3d 98, 102 (9th Cir.) (relying on *Warin* and other cases to reach the same conclusion), *cert. denied,* 519 U.S. 912, 117 S.Ct. 276, 136 L.Ed.2d 199 (1996). In the brief in support of his motion, Defendant mounts a lengthy challenge to this "collective rights" view of the Second Amendment. Primarily, he relies on a passage in *United States v. Verdugo-Urquidez,* 494 U.S. 259, 265, 110 S.Ct. 1056, 1061, 108 L.Ed.2d 222 (1990)—a case involving the Fourth Amendment, and not the Second—in which the Supreme Court stated that the constitutional references to "the people" found in the First, Second, and Fourth Amendments all are meant to encompass "a class of persons who are part of a national community." Further, this Court itself has previously noted some evidence that the Second Amendment confers individual rights. *See United States v. Hammonds,* 786 F.Supp. 650, 657 n. 5 (E.D.Mich.1992).

However, the Sixth Circuit recently reaffirmed its conclusion in *Warin. See United States v. Baker,* 197 F.3d 211, 216 (6th Cir.1999) (citing *Warin* in holding that the defendant in that case had "no fundamental right to possess an assault rifle"), *cert. denied,* —— U.S. ——, 120 S.Ct. 1262,

146 L.Ed.2d 117 (2000). Evidently, then, the Court of Appeals does not view its ruling in *Warin* as having been called into question by any subsequent Supreme Court decision. Nor does this Court find in *Verdugo-Urquidez* an express declaration of the meaning of the Second Amendment that might be sufficient to overrule *Warin. But see United States v. Emerson,* 46 F.Supp.2d 598, 601 (N.D.Tex.1999) (finding that *Verdugo-Urquidez* does "interpret[ ] the text of the Second Amendment"). This Court is not free to recognize a constitutional right where the Sixth Circuit has ruled that no such right exists. It follows that Defendant's sweeping Second Amendment challenge to the federal prohibition against the possession of machine guns cannot succeed.

### III. *CONCLUSION*

For the foregoing reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's March 28, 2000 Motion to Dismiss Indictment is DENIED.[4]

---

4. As noted earlier, Defendant has filed both a motion to dismiss indictment and a motion for jury instructions, and these motions rest largely, if not entirely, upon the same legal theories. To the extent that the Court's ruling here on the motion to dismiss indictment does not address arguments made in the motion for jury instructions, Defendant should raise any such outstanding issues at trial.