RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0022P (6th Cir.)
File Name: 01a0022p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

　　　　　*v.*

JASON S. MISE,
　　　　　*Defendant-Appellant.*

No. 99-3631

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 98-00333—Peter C. Economus, District Judge.

Submitted: October 25, 2000

Decided and Filed: January 19, 2001

Before: DAUGHTREY and CLAY, Circuit Judges;
RUSSELL, District Judge.[*]

———————————

**COUNSEL**

**ON BRIEF:** George C. Pappas, Akron, Ohio, for Appellant. Robert J. Becker, ASSISTANT UNITED STATES ATTORNEY, Akron, Ohio, for Appellee.

_____

[*] The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

1

RUSSELL, J., delivered the opinion of the court, in which DAUGHTREY, J., joined.  CLAY, J. (pp. 12-14), delivered a separate concurring opinion.

———————————

## OPINION

———————————

RUSSELL, District Judge.  A jury convicted Defendant of manufacturing and possessing an unregistered pipe bomb under 26 U.S.C. §§ 5861(d)-(f).  Defendant, Jason S. Mise, appeals from the district court's refusal to grant his motion to dismiss and from the district court's sentencing enhancements for obstruction of justice under USSG § 3C1.1 and for possession or transfer with knowledge, intent, or reason to believe that the pipe bomb would be used or possessed in connection with another felony under USSG § 2k2.1(b)(5).  We **AFFIRM** the district court's judgment of conviction and sentence.

### BACKGROUND

In June 1997, Ralph Case visited Defendant Jason S. Mise.  While visiting Mise, Case noticed explosives at the residence.  Several weeks later Case had an argument with Shane Legg.  Case decided that he wanted to physically harm Legg.  Case remembered that Mise produced explosives and contacted Mise about his plans to harm Legg.  According to Case, Mise told him that he could "get something or he could do something and put stuff in it, like nails or screws or something . . . and it would do a lot of damage."  Although Case testified that Mise did not promise to make the bomb for Case, Case also testified that the two agreed that Case would stop by Mise's house again.  Shortly afterwards, Case checked himself into a drug rehabilitation program in part to combat a drug addiction and in part to prevent himself from harming Legg.  He never returned to Mise's home.

Diana Case, the mother of Ralph and Norman Case, testified that Mise came to her home and told her that he had

was premised, *United States v. Rock Island Armory, Inc.*, 773 F. Supp. 117 (C.D. Ill. 1991), has been since rejected by the Court of Appeals for the circuit in which *Rock Island* was decided.  *See Bournes*, 105 F. Supp. 2d at 745 n.3 (citing *United States v. Ross*, 9 F.3d 1182, 1192-94 (7th Cir. 1993)).

Based upon the above cited authority, I believe that this circuit should reject *Dalton's* reasoning in favor the Fourth Circuit's reasoning in *Jones*.  Applying *Jones* to the case at hand, Defendant's claim fails where he could have avoided prosecution simply by refusing to manufacture and possess the pipe bomb.

made a bomb for Ralph.  Norman Case testified that he did not want Ralph to use the bomb, so he went to Mise's home to get it.  According to Norman Case, Mise told him that he had made the bomb specifically for Ralph so that he might retaliate against Legg, and that Mise knew Ralph would actually use the bomb.

Norman Case stored the bomb at his home for a few weeks before trying to sell it to an undercover agent of the Bureau of Alcohol, Tobacco and Firearms.  A grand jury indicted Norman Case for possession of a pipe bomb.  Case thereafter entered into a plea agreement with the government.  As a part of this agreement, Norman Case tape recorded a conversation between himself and Mise where Mise explained how he had made the bomb and the powders he used.  Although Mise initially agreed to make another bomb for Norman Case, he backed out, believing "somebody was out to get him."

At trial Mise testified that he fabricated the story about making the bomb and agreed to make one for Norman Case only so Case would leave him alone.  Mise testified that he was "[j]ust reciting things that [he had] read . . . from various books and heard on the news," and that he never intended to build a bomb for Norman Case, that he did not make the bomb and that he was never in possession of the pipe bomb.

On September 23, 1998, a grand jury indicted Mise in two counts of a three count indictment.  The indictment charged Mise with unlawful manufacture of a firearm and possession and transfer of an unregistered pipe-bomb.  The third count charged Norman Case with possession and transfer of an unregistered pipe bomb.  Mise pleaded not guilty to both counts against him while Case pleaded guilty pursuant to a plea agreement.  On December 4, 1998, Mise filed a Motion to Dismiss Indictment.  After a hearing the district court denied that motion.

On December 10, 1998, a jury found Mise guilty of manufacturing and possessing unregistered pipe bomb.  On May 4, 1999, the district court sentenced Mise to 70 months

of incarceration.  Mise timely filed a notice of appeal in accordance with the provisions of Fed. R. App. P. 4(a).

## DISCUSSION

### I. Motion to Dismiss

Mise first argues that the district court erred in denying his motion to dismiss because the government failed to prove the essential elements of the crimes.  This Court reviews de novo a district court's ruling on a motion to dismiss.  *Patmon v. Mich. Supreme Court*, 224 F.3d 504 (6th Cir. 2000).

A jury convicted Mise of manufacturing and possessing an unregistered pipe bomb under 26 U.S.C. § 5861(d)-(f).  Failure to register is an element of those crimes.  Under 26 U.S.C. § 5812(a), an application to transfer and register "shall be denied if the transfer, receipt, or possession of the [bomb] would place the transferee in violation of the law."  Noting that the statute does not distinguish between state and federal law, Mise contends that he could not have registered the pipe bomb because Ohio law prohibits the possession of a "dangerous ordnance," such as a bomb.  *See* Ohio Rev. Code Ann. §§ 2923.17(A), 2923.11(H) and (K)(2).  Given the Ohio statute, Mise argues that "due process bars his conviction under a statute which punishes his failure to register when the registration is precluded by law."  *United States v. Dalton*, 960 F.2d 121, 122 (10th Cir. 1992), *cert. denied*, 510 U.S. 892, 114 S. Ct. 253, 126 L.Ed.2d 205 (1993).

Mise argues that *United States v. Dalton*, dictates a dismissal of the indictment in this case.  960 F.2d 121 (10th Cir. 1992).  In *Dalton*, the Tenth Circuit held it unconstitutional to convict a person for possessing an unregistered machine gun since 18 U.S.C. § 922(o) prohibited the possession of machine guns and made registration a legal and literal impossibility.  *See also United States v. Gambill*, 912 F. Supp. 287 (S.D. Ohio 1996)(reversing a conviction for possession of an unregistered machine gun when registering a machine gun was a statutory impossibility).

*Dalton*.  Just as the defendant in *Jones* could have complied with both the NFA and § 922(o) by not dealing in newly-made machine guns, so, too, Defendants in this case could have complied with NFA § 5861(d) and Michigan's ban on Molotov cocktails by not possessing those destructive devices in the first place.  *Dalton's* impossibility analysis is therefore flawed, and this Court believes that there is nothing fundamentally unfair with holding Defendants to answer for their breach of federal law regardless of what state law may say.  If this were not the case, federal criminal statutes could be enforced only in states which agreed with and accepted them.  This is a preposterous contention.

Defendants' arguments to dismiss the indictment, then, when boiled down to their essence, collapse under simple common sense.

842 F. Supp. 278, 281 (E.D. Mich. 1994) (footnote omitted).

A few years later, in *United States v. Wolfe,* 32 F. Supp. 2d 945, 954-55 (E.D. Mich. 1999), the Eastern District of Michigan rejected *Dalton* for the reasons set forth in *Djelaj*.  Finally, in *United States v. Bournes*, once again the Eastern District of Michigan took the opportunity to reject *Dalton* and its reasoning:

[T]his Court has previously rejected the reasoning in *Dalton*, and sees no reason to reach a different conclusion here.  Simply stated, the dilemma confronted by Defendant was of his own making, and could have been avoided if he had refrained from possessing outlawed machine guns in the first instance.  Thus, the Court finds that the Government's refusal to permit Defendant to register machine guns does not operate to bar Defendant's prosecution for possessing unregistered machine guns.

105 F. Supp. 2d 736, 744-45 (E.D. Mich. 2000) (footnote omitted).  The *Bournes* court also noted that *Dalton's* viability is questionable in that the case upon which *Dalton*

---

### CONCURRENCE

---

CLAY, Circuit Judge, concurring.   I concur in the majority's opinion affirming Defendant's conviction and sentence.  I write separately to expressly state that *United States v. Dalton*, 960 F.2d 121 (10th Cir. 1992) should be rejected even if it is distinguishable with respect to the matter at hand.

Several circuit courts have rejected *Dalton* in favor of the Fourth Circuit's reasoning in *United States v. Jones*, 976 F.2d 176 (4th Cir. 1992).  For example, in *United States v. Ardoin*, 19 F.3d 177, 180 & n.4 (5th Cir. 1994), the Fifth Circuit elected to follow *Jones* over *Dalton* when it reasoned that the defendant in *Ardoin* could have avoided prosecution for failing to register and pay taxes on illegal machine guns by refusing to accept these weapons in the first place.  Later, in *United States v. Gresham*, 118 F.3d 258, 263 (5th Cir. 1997), the court once again rejected *Dalton* and held that "if it was legally impossible for Gresham to register the pipe bomb and thereby comply with the NFA, he could avoid prosecution by not engaging in the illegal activity."   The Seventh, Eighth, Ninth, and Eleventh circuits have similarly rejected *Dalton*. *See United States v. Elliott*, 128 F.3d 671, 672 (8th Cir. 1997) (*per curiam*); *Hunter v. United States*, 73 F.3d 260, 261-62 (9th Cir. 1996) (*per curiam*); *United States v. Rivera*, 58 F.3d 600, 601-02 (11th Cir. 1995); *United States v. Ross*, 9 F.3d 1182, 1192-94 (7th Cir. 1993), *vacated on other grounds*, 511 U.S. 1124 (1994).

In addition, the Eastern District of Michigan has recently rejected *Dalton* on several occasions.  In *United States v. Djelaj*, the district court criticized *Dalton* as follows:

> The court finds the analysis in [*United States v. Jones*, 976 F.2d 176 (4th Cir. 1992)] and [*United States v. Ross*, 9 F.3d 1182 (7th Cir. 1993)] clearly superior to that of

This case does not present an analogue to *Dalton*.  In *Dalton*, testimony revealed that it was indeed a statutory impossibility to register a machine gun.  Registration of a pipe bomb in the instant case is not clearly a legal impossibility and *Dalton* does not apply.  *See United States v. Dodge*, 852 F. Supp. 135, 137 (D.Conn. 1994); *see also United States v. Rivera*, 58 F.3d 600, 602 (11th Cir. 1995)(distinguishing machine guns from silencers because there is not statutory ban against registering silencers); *United States v. McCollom*, 12 F.3d 968, 970-71 (10th Cir. 1993)(limiting *Dalton* holding to prosecutions involving machine guns).  Although Ohio law does prohibit the possession of bombs generally, this prohibition does not extend to bombs "registered in the national firearms registration."   Ohio Rev. Code Ann. §§ 2923.17(C)(5).  As such, the Ohio legislature has excepted federally registered bombs.  Mise has cited no law that would prohibit the registration of a pipe bomb.

This case presents a situation similar to that before the Southern District of Ohio in *United States v. Gambill*, 912 F. Supp. 287 (S.D. Ohio 1996).  In *Gambill*, the defendant argued that it would have been impossible for him to register a machine gun, silencer and pipe bomb.  Although the court agreed with the defendant regarding the registration of a machine gun given the statutory prohibition of such a registration, the court found the defendant's argument regarding a silencer and pipe bomb unpersuasive.  "No statute . . . categorically prohibits the possession of a pipe bomb . . . [and the defendant] should have followed the appropriate application procedures for his pipe bomb."  *Id.* at 290-91.  As the *Gambill* court reasoned,

> BATF maintains a separate procedure for identifying destructive devices.   *See* §26 U.S.C. 5842.  Section 5842(a) provides that anyone making a firearm shall identify each firearm, other than a destructive device, by serial number.  A destructive device, however, shall be identified "as the Secretary may by regulations prescribe."   Title 27 of the Code of Federal Regulations

section 179 has extensive provisions for the identification of firearms including destructive devices.

*Id.* at 291. As such, the registration of a pipe bomb is not a legal impossibility. *Id.*

Mise has not presented evidence that he made an application to register his pipe bomb or evidence that registration is a legal impossibility. Accordingly, Mise's argument that he could not have registered the pipe bomb fails.

## II. Obstruction of Justice

The defendant argues that the district court failed to make proper findings of fact to support the determination that Mise committed perjury in his trial testimony, leading to a two-level sentence enhancement for obstruction of justice under USSG § 3C1.1. This Court reviews the district court's factual findings under a clearly erroneous standard. *United States v. McDonald*, 165 F.3d 1032, 1034 (6th Cir. 1999). The district court's determination of whether the facts constitute an obstruction of justice is a mixed question of law and fact which this Court reviews de novo.

An adjustment for obstruction of justice applies to a defendant "committing, suborning or attempting to suborn perjury." USSG § 3C1.1 comment. (n. 4(b)). A witness perjures himself if he "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S. Ct. 1111, 122 L.Ed.2d 445 (1993). This Circuit interprets *Dunnigan* to require the district court to fulfill two requirements: "first, it must identify those particular portions of the defendant's testimony that it considers to be perjurious, and second, it must 'either make specific findings for each element of perjury or at least make a finding "that encompasses all of the factual predicates for a finding of perjury."'" *United States v. Sassanelli*, 118 F.3d 495, 501 (6th

his pipe bomb or evidence that registration is a legal impossibility; the district court did not err in giving a two-level sentence enhancement for obstruction of justice under USSG § 3C1.1 as the district court identified the perjurious portions of Mise's testimony and properly made specific findings for each element of perjury, thus meeting its burden under *Dunnigan* and *Sassanelli*; and the district court did not err in increasing Mise's offense level pursuant to USSG § 2k2.1(b)(5) as the district court made proper findings of fact and described the evidence that was elicited at trial when imposing the enhancement.

I think there is ample evidence for this Court to infer that there was reason to believe in the mind of the defendant that it was – he made the bomb and it was going to be used for the purpose of injuring another person.

So the Court will add four more levels under 2K2.1(b)(5).

Mise argues that only the pipe bomb possessed by Norman Case is at issue in this trial, and that there is no evidence to suggest that Norman Case intended to use it in the commission of a felony. Mise claims that any knowledge he had regarding Ralph Case's plan to harm Legg became irrelevant when Ralph Case abandoned his claim. Mise's argument fails for a number of reasons. First, the evidence does not support a conclusion that Mise knew that Ralph Case had abandoned his plan. Indeed, Diane Case testified that Mise came to her home and said, "I have a pipe bomb that I went ahead and made for Ralph," thus indicating that Mise made the bomb for Ralph rather than for Norman. Mise also testified that "a pipe bomb is a destructive device used to hurt people." Although this is not conclusive alone, combined with the other evidence, it demonstrates Mise's knowledge or intent to produce the pipe bomb with intent to harm another. Furthermore, after hearing and observing all of the testimony, the district court concluded that the evidence had shown that Mise believed he produced the pipe bomb and transported it in connection with a felony.

The district court made findings of fact and described the evidence that was elicited at trial in order to impose the enhancement. The district court did not err in increasing defendant's offense level pursuant to Sentencing Guideline section 2k2.1(b)(5).

## CONCLUSION

This Court **AFFIRMS** the district court's judgment of conviction and setence. The district court properly denied Mise's motion to dismiss after correctly holding that Mise had not presented evidence that he made an application to register

Cir. 1997)(citations omitted). In this case, the district judge did both.

The district court made the following statements during the sentencing hearing:

In order for this Court to determine whether or not two levels should be added for obstruction of justice under 3C1.1 of the guidelines for perjury, the Court must consider three things:

One, the Court must make a specific finding that the statements were perjurious; two, the statements must be given to mislead the fact finder; and three, the statements must be material and/or nontrivial to the investigation.

Defendant's testimony does conflict with, first of all, the testimony of his codefendant, Norman Case, who also testified at trial that the defendant gave him the pipe bomb.

Case, Norman Case, who attempted to sell the pipe bomb to an undercover agent agreed to cooperate with the investigation and recorded several conversations with the defendant in January of '98. During a recorded conversation between Norman Case and the defendant, defendant admitted making the pipe bomb.

The question then that the defendant committed perjury on the witness stand, he denied making the pipe bomb, so there is no question in this Court's mind that the statement was given, of course, to mislead the jury in this case.

And obviously the statement was material because it went to the heart of the charges in the indictment. They were nontrivial.

So the Court will add two levels pursuant to Section 3C1.1 of the guidelines.

Mise argues that the district court "merely found the Defendant-Appellant committed perjury because he was found guilty of the charged offenses" and that the "trial court made no bases of a factual finding that the testimony created a willful impediment to justice." The record does not reflect such a conclusory result. The district court made specific findings for each element of perjury and met its burden under *Dunnigan* and *Sassanelli*. The record reflects the court's reliance on the conflict between the defendant's tape-recorded comments where he admitted making the bomb and his trial testimony where he denied making the bomb. Although Mise attempted to explain away the conflicting statements at trial, this Court neither heard nor observed the witness at trial. This Court does not typically review a district court's determinations regarding credibility as those seeing and hearing witnesses sit in the best position to make that judgment. *United States v. Gessa*, 57 F.3d 493, 496 (6th Cir. 1995)(citation omitted). This Court finds that the district court did not err in its decision.

## III. Possession or Transfer in Connection with Another Felony

Mise's final argument is that the district court erred in applying a four-level enhancement for possession or transfer with knowledge, intent, or reason to believe that the pipe bomb would be used or possessed in connection with another felony. USSG § 2k2.1(b)(5). This Court accepts a district court's findings of fact unless they are clearly erroneous. *United States v. Covert*, 117 F.3d 940, 947 (6th Cir. 1997). "This court, however, applies a de novo standard of review to the question of whether the facts, as determined by the district court, warrant the application of a particular guideline." *See United States v. Medina*, 992 F.2d 573, 592 (6th Cir. 1993).

USSG § 2K2.1(b)(5) provides for a four level enhancement "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used

or possessed in connection with another felony offense." The district court made the following statements during its sentencing hearing:

Well, I think that in this instance, the Court must look to what was in the mind of the defendant when he manufactured the pipe bomb. It's clear from the evidence that there was a feud between Ralph Case and another individual named Legg, and he discussed that feud with the defendant, and they had a discussion about how Ralph could retaliate by – I think there was some language to the effect that Ralph was – Ralph was at Jason's house, that there was materials [sic] to make pipe bombs and there were firecrackers, M-50's – I might be misquoting the evidence – and there was a statement to the effect that it would have to be a bigger one.

And there is no question that Ralph's involvement broke off because he ended up in the hospital. But along comes Norman Case, and the defendant gives him the pipe bomb.

Now, there are inferences that have to be drawn, but I think the Court can make an inference that the defendant manufactured the bomb for the purposes of – let me back up – manufactured the bomb to give to Ralph for the purpose of injuring his former friend whose last name was Legg.

Although he didn't complete the act, it was what the defendant believed that counts, not whether or not the felony was actually committed as it states under 2k2.1(b)(5), and I am quoting: "If the defendant used or possessed any firearm or ammunition in connection with another felony offense, or" – and this is the applicable language – "possessed or transferred any firearm or ammunition with knowledge, intent or reason to believe that it would be used or possessed in connection with another felony offense."